**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| PHYLLIS HEADLY, *Plaintiff*,<br><br>v.<br><br>LIBERTY HOMECARE OPTIONS, LLC *et al.*, *Defendants*. | No. 3:20-cv-00579 (JAM) |

## ORDER DENYING MOTION FOR CONDITIONAL CERTIFICATION

Plaintiff Phyllis Headly brings this putative Fair Labor Standards Act ("FLSA") collective action for unpaid overtime wages against defendants Liberty Homecare Options, LLC ("Liberty") and the company's owner, Lucia Devivo Catalano. Headly moves for conditional certification of this lawsuit as a collective action on behalf of all live-in caregivers who have worked for defendants since January 15, 2017, and for this Court to supervise notice to potential opt-in plaintiffs pursuant to the FLSA, 29 U.S.C § 216(b). Because I conclude that Headly has not demonstrated that she is similarly situated to other potential opt-in plaintiffs, I will deny the motion for conditional certification without prejudice.

### BACKGROUND

Liberty employs both live-in and non-live-in workers who provide home caregiving services to clients. Doc. #30 at 3.[1] Live-in caregivers provide a variety of services for their clients, which may include assistance monitoring health and physical conditions, medication reminders, financial reminders, errands, dressing and grooming, household chores, help with

[1] I have no need at this time to evaluate defendants' argument that Catalano is not an employer.

personal hygiene, turning clients in the bed, and assisting with other activities of daily living. *Ibid*.; Doc. #24-1 at 6.

Headly was employed as a live-in caregiver from March 2016 through March 2019. *Ibid*. As a live-in caregiver, Headly was at her client's residence for 24 hours per shift, but her work schedule included eight hours of time-off to sleep and at least three hours of time-off for meal breaks each day. Docs. #24-1 at 7; #30 at 4. It is undisputed that live-in caregivers like Headly are not exempt from the FLSA's overtime requirements, and that if meal or sleep breaks are interrupted to care for clients, the live-in caregivers should be paid for those hours. *See* Docs. #24-8 at 1; #30 at 5-8.

Headly's 24-hour live-in caregiver employment contract signed in March 2016 states that "compensation will be based on a 13 hour work day. This is calculated by subtracting meals/breaks (3 hours total) and sleep time (8 hours total) from a 24 hour period." Doc. #24-7 at 1. The contract also states caregivers "must receive a minimum of 8 hours sleep of which 5 hours MUST BE UNINTERRUPTED, within a 24 hour period. Any interruption of sleep must be called into [the] office and reported within 24 hours." *Ibid*.

Defendants provided their live-in caregivers with timesheets to record the hours worked each week. Through April 2018, defendants used a timesheet that provided spaces for recording sleep and meal breaks, but that did not provide a specific space for noting if sleep or meal breaks were interrupted. *See, e.g.*, Doc. #24-9 at 1. That timesheet states "CAREGIVER MUST RECEIVE A MINIMUM OF 8 HOURS OF SLEEP OF WHICH 5 HOURS MUST BE UNINTERRUPTED" and "ANY INTERRUPTIONS OF SLEEP MUST BE CALLED INTO THE OFFICE WITHIN 24 HOURS!" *Ibid*.

In late April 2018, defendants revised their policies to add a 45-minute break each day along with the three hours of meal breaks and the eight-hour break for sleep. Doc. #30 at 5. The revised employment agreement that Headly signed in April 2018 states the caregiver "is required to take the full time for each unpaid break"; the caregiver "must record each interrupted break as extra hours worked on the timesheet"; and the "taking of all unpaid breaks in full is a material and very important term of this Agreement." Doc. #30-1 at 54-55 (emphasis omitted).

Defendants also revised their timesheets to include options to circle different time amounts for each break and space to explain any extra hours worked if breaks were interrupted to help the client. *See, e.g.*, Doc. #24-9 at 19. The revised timesheet states "[y]ou must circle the most accurate time or write the break time in it if it is different from the time listed above" and "[i]f the caregiver's 8-hour unpaid sleep/personal break time OR any of the 4 unpaid daytime breaks are interrupted to help the client, PLEASE ADD THAT IN THE EXTRA HOURS WORKED BOX WITH REASON OF INTERRUPTION. If a caregiver does not catch up on their sleep/personal time or 4 unpaid daytime breaks, staff is required to call the office and report. ALL shortened or skipped break[s] must also be written on this timesheet for documentation reasons." *Ibid*. Finally, the caregiver must sign the timesheet stating "that all of the above timesheet breaks and any listed interruptions have been reviewed and are accurate for the week." *Ibid*.

Headly alleges that she "worked during [her] meal breaks to provide assistance to Defendants' client who required constant monitoring since the client had a pacemaker installed, he was on a wheelchair and used [an] oxygen tank for breathing." Doc. #24-6 at 3 (¶ 12). She also alleges she "had to wake up at least once, if not multiple times, during virtually every night [she] worked for Defendants to attend to issues" like helping her client use the bathroom or

returning him to bed when he sleepwalked. *Ibid*. (¶¶ 15-16). Headly alleges that she could not record the interruptions on the timesheets defendants provided through April 2018, but that on "a few occasions" around 2017 and 2018 she reported to her supervisors that she was working during her breaks to provide assistance to her client, and that she was not compensated for that work even after she called. *Id*. at 3-5 (¶¶ 13, 17-18, 21, 28, 30). In her deposition testimony, Headly stated that she stopped reporting the interruptions because the reports made no difference, defendants said nothing would change from her calls, and at times reporting interruptions delayed her paychecks because defendants would say there were issues with her timesheets. Doc. #30-2 at 21, 24.

In addition, Headly alleges that other live-in caregivers were subject to the same workplace policies and were also provided with timesheets that did not allow them to record sleep and meal break interruptions through April 2018. Doc. #24-6 at 2, 4 (¶¶ 8, 22, 25-26). Headly stated "I believe that Defendants' HHAs who lived with Defendants' clients were subject to the same type of interruptions (breaks and sleep) that I was because the job duties of Defendants' HHAs are similar, and they primarily care for clients who are elderly and need assistance at night." Doc. #24-6 at 3-4 (¶ 20). She also alleges that "Defendants were aware of these sleep interruptions at night because I and other HHAs, from time to time, informed Defendants of these interruptions." *Id*. at 4 (¶ 21).

In her deposition testimony, Headly stated that her allegations about other employees are based on conversations "over the years," including at shift changes, about their similar issues with their clients due to the nature of live-in care work. Doc. #30-2 at 37, 39. She identified two particular employees she had discussed the interruptions with—Wendy and Flora—and stated that at least Wendy had similar issues with sleep interruptions and not getting paid overtime for

extra hours she worked. *Id*. at 36, 39-40. When asked if Wendy reported interruptions, Headly stated "I'm sure she would," and when asked if Wendy was paid for them, Headly stated "I don't know." *Id*. at 36.

A second opt-in plaintiff consented to join this action in January 2021, after Headly had filed her motion for conditional certification. *See* Doc. #36.

Headly now moves to conditionally certify a collective, pursuant to the FLSA, 29 U.S.C. § 216(b), consisting of "[a]ll employees called Home Health Aides, a/k/a Caregivers who worked at least one 'live-in' shift for the Defendants … in Connecticut during any time between January 15, 2017 until the date of final judgment." Doc. #24 at 1. Defendants oppose the motion on the grounds that Headly has not shown that she is similarly situated to the potential opt-in plaintiffs, and that Headly's proposed notice and consent forms and notice procedures are defective. Doc. #30. The parties each filed supplemental briefing on whether the Second Circuit's decision in *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515-22 (2d Cir. 2020), may have bearing on the pending motion. Docs. #34-35. Headly's supplemental briefing also represented her reply. Doc. #35 at 1 n.1.

I heard oral argument from counsel on January 26, 2021, and this ruling now follows.

## DISCUSSION

Congress enacted the Fair Labor Standards Act to "protect workers and ensure that they are not subjected to working conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 243 (2d Cir. 2011) (quoting 29 U.S.C. § 202(a)). In furtherance of this goal, the FLSA imposes numerous "wage and hour" requirements, including an overtime provision mandating employers to pay non-exempt employees time-and-a-half for

each hour worked in excess of 40 hours per week. *See* 29 U.S.C. § 207(a)(1). Under federal regulations, "bona fide" sleep breaks of up to eight hours and meal breaks may be excluded from work time when workers have 24-hour shifts, but if the sleeping period "is interrupted by a call to duty" so that "the employee cannot get at least 5 hours' sleep during the scheduled period[, then] the entire time is working time." 29 C.F.R. § 785.22.

The FLSA not only authorizes an employee to bring a private cause of action on their own behalf but also allows an employee to bring a "collective action" on behalf of similarly situated employees. *See* 29 U.S.C. § 216(b); *Shahriar*, 659 F.3d at 243-44. "One of the principal conditions to proceeding collectively under § 216(b) is that the named plaintiffs be 'similarly situated' to the opt-in 'party plaintiff[s].'" *Scott*, 954 F.3d at 515 (quoting 29 U.S.C. § 216(b)). The Second Circuit has described a two-step process for district courts to evaluate the certification of collective actions brought under the FLSA based on the similarly situated requirement.

At the first step, a district court decides whether to send notice of the lawsuit to potential opt-in plaintiffs by considering whether the named plaintiffs have made a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Ibid.* (quoting *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016)). "At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." *Ibid*. (same).

"[P]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id*. at 516. Although "unsupported assertions" will not satisfy this requirement, the standard of proof at

step one "should remain low" because "the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (cleaned up).

Headly seeks step-one conditional certification. The only common policy or practice that Headly identifies is the failure to accurately record hours worked through defendants' use of allegedly "defective timesheets" that "did not have a place to record all the hours they worked" including "interruptions to their meal breaks and sleep time." Doc. #24-1 at 11-12. But Headly points to no authority suggesting that a poorly designed timesheet violates the FLSA.

Moreover, nothing about the timesheets appears unlawful on their face.[2] The caregiver employment agreement and both versions of the timesheets expressly require the caregivers to take uninterrupted breaks and to report any interruptions to the office. The timesheets clearly require caregivers to attest that they have accurately recorded their work time and to report interruptions. At most, they are suggestive that caregivers will work a certain number of hours—consistent with the employment agreement—which is not unlawful. *See, e.g. Mmolawa v. Diligent Enterprises, Inc.*, 2020 WL 7190819, at *8 (D. Conn. 2020) (granting summary judgment to employer of live-in health care aide bringing FLSA claim because although pre-printed timesheets were "suggestive," the timesheets required accurate recording including adjustments "if the employee receives more or less time than that suggested by the form"). In

[2] Headly's motion includes an opinion from Patrick R. Stonich, a "certified legal nurse consultant," finding that defendants' timesheets fall below the standard of care because they "did not provide adequate space and/or area to document care given after midnight." Doc. #24-10 at 1-2. However, I do not credit Stonich's opinion for this ruling because it is not clear from his letter what timesheets he was asked to analyze. Stonich's opinion references "CareCo Shoreline Inc." in addition to Liberty, so it is unclear which company's timesheets his opinion addresses, and his opinion does not attach or explicitly reference the timesheets that he analyzed. In addition, even if he analyzed defendants' timesheets, his letter does not indicate whether he analyzed their pre-April 2018 timesheet or the post-April 2018 timesheet. The reference in his opinion to a lack of space to document care given after midnight does not appear to match up with the design of either timesheet. Accordingly, it is unclear whether Stonich's opinion has any relevance to this action, and I do not consider it substantively for the purpose of this ruling.

short, Headly cannot meet her burden to show there are similarly situated plaintiffs simply on the basis that she and other caregivers used these timesheets provided by the defendants.

To be sure, "an employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363 (2d Cir. 2011). But "[t]o establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Id*. at 361. "In other words, once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." *Id*. at 363.

Headly has not argued that she—or other potential members of the putative collective—recorded their hours accurately on their timesheets but were nonetheless denied overtime pay. Therefore, the only way Headly and other potential opt-in plaintiffs could establish liability under the FLSA is by showing that—notwithstanding the caregivers' representations on their signed timesheets—defendants knew or should have known that their live-in employees were not actually receiving the uninterrupted sleep and meal breaks that are required if defendants deducted those breaks.

Headly alleges that she consistently worked overtime hours beyond what defendants compensated her for because her sleep and meal breaks were interrupted, that she gave defendants notice that her breaks were being interrupted in 2017 and 2018, and that defendants still did not provide additional overtime compensation. But her motion for conditional certification does not contain any non-conclusory allegations that other caregivers employed by defendants had their sleep and meal breaks interrupted or that defendants had notice of those

interruptions. For example, Headly's declaration in support of her motion simply states in conclusory terms that "I and Defendants' other HHAs, are or were frequently interrupted during their meal breaks to care for Defendants' clients" and that "Defendants were aware of these sleep interruptions at night because I and other HHAs, from time to time, informed Defendants of these interruptions." Doc. #24-6 at 3-4 (¶¶ 14, 21). Headly also states "I believe that Defendants' HHAs who lived with Defendants' clients were subject to the same type of interruptions (breaks and sleep) that I was because the job duties of Defendants' HHAs are similar, and they primarily care for clients who are elderly and need assistance at night." *Ibid.* (¶ 20). Headly's declaration does not identify any other caregivers by name or provide any basis for how she has any personal or trustworthy knowledge that other caregivers employed by defendants were not paid wages they were owed under the FLSA.

Additionally, defendants' opposition filings include excerpts of Headly's deposition testimony in which she stated that her allegations about other employees were based on conversations "over the years," including at shift changes, and named two employees with whom she had discussed the break interruptions—Wendy and Flora. Although Headly states that Wendy had similar issues with sleep interruptions and not getting paid overtime for hours she worked, Headly only stated "I'm sure she would" when asked if Wendy reported the interruptions and stated "I don't know" when asked if Wendy was paid for them. Doc. #30-2 at 36. Headly did not provide any additional details at all about Flora.

Headly's allegations are too conclusory and general to plausibly allege that she and other caregivers employed by defendants "together were victims of a common policy or plan that violated the law," even considering the statements in Headly's deposition that Headly's counsel did not properly include as part of the motion for conditional certification. *Scott*, 954 F.3d at 515.

Courts regularly "den[y] conditional certification where plaintiffs submitted threadbare, overly conclusory allegations of similarly situated employees." *Islam v. LX Ave. Bagels, Inc.*, 2019 WL 5198667, at *6 (S.D.N.Y. 2019) (collecting cases). "[W]here plaintiff's sole affidavit does not provide any detail as to a single such observation or conversation, such as when or where the observations or conversations took place, that affidavit is insufficient to meet even the low evidentiary threshold required for conditional certification." *Reyes Cruz v. 70-30 Austin St. Bakery Inc.*, 2019 WL 1929910, at *4 (S.D.N.Y. 2019) (internal quotation omitted). "Such details are particularly important where a conditional certification motion is based on the lone affidavit of a single employee." *Mata v. Foodbridge LLC*, 2015 WL 3457293, at *4 (S.D.N.Y. 2015). Because Headly has not alleged with sufficient specificity that there are similarly situated employees who also suffered violations of the FLSA, I will deny Headly's motion for conditional certification.[3]

---

[3] Headly's reply brief asks me to "take judicial notice of … prior individual actions against Defendants for unpaid overtime hours due to bad timesheets that prevented documenting exact hours worked in interruptions to sleep and meal breaks: *Rankiritlane v. Liberty Homecare Options, LLC*, Superior Court, Judicial District of New Britain, Docket No. CV-18-6042337-S; *Mokobi v. Liberty Homecare Options, LLC*, Superior Court, Judicial District of Waterbury, Docket No. CV-19-6046434-S; *Letsatsi v. Liberty Homecare Options, LLC,* Superior Court, Judicial District of New Britain, Docket No. CV-19-6051312-S; *Kolobe v. Liberty Homecare Options, LLC*, Superior Court, Judicial District of New Britain, Docket No. CV-19-6050925-S and … *Lekuntwane v. Liberty Homecare Options, LLC,* Superior Court, Judicial District of Waterbury, Docket No. CV-19-6047314-S." Doc. #35 at 4 n.5. I have attempted to review the public dockets for these five cases as cited by Headly and have been unable to substantiate Headly's assertion that they involved similar claims against the same defendants. Only one of the cited cases, *Rankiritlane*, appears to have been actually brought against defendants, and it appears to have settled. *See Rankiritlane v. Liberty Homecare Options, LLC*, No. CV18-6042337-S, http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=HHBCV186042337S [https://perma.cc/9K6V-VBUQ]. The docket number provided for *Lekuntwane* corresponds to a different case brought by Headly's counsel against a *different* live-in care agency. *See Sello v. Live-ins for the Elderly, LLC et al.*, No. CV19-6047314-S, http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=UWYCV 196047314S [https://perma.cc/K5HK-TKDF]. A lawsuit brought by Lekuntwane against a different live-in care agency by the same counsel is currently pending in federal court. *See* No. 3:20-cv-00386-RNC. The docket numbers provided by Headly for *Mokobi*, *Kolobe,* and *Letsatsi* do not correspond to any actions with a public docket. *See* http://civilinquiry.jud.ct.gov/LoadDocket.aspx?DocketNo=ALL-CV-19-6046434-S&incparty=Y&incmot=Y [https://perma.cc/8TJ3-6MZK]; http://civilinquiry.jud.ct.gov/LoadDocket.aspx?DocketNo=ALL-CV-19-6051312-S&incparty=Y&incmot=Y [https://perma.cc/W7ZH-2SB4]; http://civilinquiry.jud.ct.gov/LoadDocket .aspx?DocketNo=ALL-CV-19-6051312-S&incparty=Y&incmot=Y [https://perma.cc/LEW3-VAWJ]. However, a name search shows actions were brought by plaintiffs with the last names Mokobi and Kolobe through the same counsel against CareCo Shoreline Inc. and Helga Pfanner in Connecticut Superior Court. *See Mokobi v. CareCo Shoreline Inc. et al.*, No. CV19-6050621-S, http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?

Finally, following oral argument and without permission of the Court or any showing of good cause, Headly filed a motion to amend that includes the declaration of an additional opt-in plaintiff in support of the motion for conditional certification and a revised consent form. Doc. #37. Defendants object to this attempt to supplement the record as "both procedurally and substantively defective." Doc. #39 at 1. Based on considerations of basic fairness and judicial economy, I will deny Headly's motion to amend, and I have not considered the additional declaration in this ruling.

But in light of these additional filings and Headly's counsel's representation that there are additional similarly-situated plaintiffs, I will deny Headly's motion for conditional certification without prejudice and with leave to file an amended motion for conditional certification. *See, e.g., Becerra v. IM LLC-I*, 2016 WL 8968978, at *6 (E.D.N.Y. 2016) (collecting cases and noting "based on the remedial purpose of the FLSA and a court's broad power to authorize discovery in an FLSA action, courts have often denied motions for conditional certification without prejudice and granted plaintiffs leave to re-file their motions after they have had a chance to obtain discovery from other potential opt-in plaintiffs"). Discovery remains open in this case, *see* Doc. #17, and Headly may file a renewed motion for conditional certification by June 22, 2021 if Headly has good faith grounds to believe that the renewed motion is supported by an evidentiary basis that cures the deficiencies identified in this ruling.

---

DocketNo=UWYCV196050621S [https://perma.cc/UPY3-CT9G]; *Kolobe v. CareCo Shoreline Inc. et al.*, No. CV19-6050622-S, http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=UWYCV1960 50622S [https://perma.cc/52KJ-TR7S]. The defendants in those cases both removed the actions to federal court, where they are currently pending in a consolidated case. *See* No. 3:19-cv-01549-VAB. Because I have not been able verify Headly's assertion that these cases were brought against the defendants in this case with similar claims, I decline to take judicial notice of the cases Headly cites or consider them substantively in this ruling.

## CONCLUSION

For the reasons set forth above, the Court DENIES Headly's motion for conditional certification of an FLSA collective action (Doc. #24) and DENIES Headly's motion to amend her filings (Doc. #37). This ruling is without prejudice to the filing by **June 22, 2021** of a renewed motion for conditional certification if Headly has good faith grounds to believe her renewed motion can cure the deficiencies identified in this ruling.

It is so ordered.

Dated at New Haven this 1st day of June 2021.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge