## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Phyllis Headly, individually, and on behalf of others similarly situated | : : | CIVIL ACTION NO.: |
| **Plaintiffs** | : : : | **3:20-cv-00579 (JAM)** |
| V. | : : | |
| Liberty Homecare Options, LLC, and Lucia Devivo Catalano, | : : : | September 21, 2021 |
| **Defendants** | : : : | |

## PLAINTIFF'S FIRST AMENDED COLLECTIVE
## AND CLASS ACTION COMPLAINT

### I.    INTRODUCTION

1.    Employers must pay overtime to employees who work over forty hours in a week.  29 U.S.C. Sec. 201, *et. seq.*; C.G.S. Sec. 31-58 *et. seq.*  Third-party employers of "live-in domestic service" employees have a duty to pay them overtime.  29 C.F.R. Sec. 552.109(c).  Domestic service employees and their employers can exclude "by agreement between themselves, the amount of sleeping time, mealtime and other periods of complete freedom from all duties[.]" 29 C.F.R. § 552.102(a). "In the case of an employee who resides on the premises, the employer ***shall keep a copy of the agreement*** specified by § 552.102 and make, keep, and preserve a record showing the exact number of hours worked by the live-in domestic service employee." 29 C.F.R. § 552.110(b) (emphasis added).  In Connecticut, this agreement must be "in writing."  C.G.S. Sec. 31-76b(2)(D).[1]

---

[1] The full text of C.G.S. Sec. 31-76b(2)(D) reads:

2.      When a "live-in domestic service" employee's sleep period is "interrupted by a call to duty, the interruption must be counted [by the employer] as hours worked." 29 C.F.R. Sec. 785.22(b).  "[I]f the employee cannot get at least 5 hours' sleep during the scheduled period *the entire time is working time*."  *Id.* (emphasis added).  Employers must pay wages to employees for their meal breaks if that time is spent predominantly for the benefit of the employer.  *Reich v. S. New Eng. Telecomms. Corp.,* 121 F.3d 58, 64 (2d Cir.1997).  Employers of "live-in domestic service" employees must keep accurate records" showing the exact number of hours worked by the live-in domestic service employee[s]," including night-time interruptions and meals breaks that they work through.  29 C.F.R. Sec. 552.110(b).

3.      Here, Defendants employ "live-in domestic service" employees called Personal Care Assistants, a/k/a Caregivers  ("PCA").  Defendants assign their PCAs to live with their clients, who require assistance caring for themselves throughout the day and night.  Defendants' PCAs perform non-exempt tasks including assisting Defendants' clients with cooking, cleaning, bathing, etc.  Defendants assign their PCAs to work 13 hour shifts each day, with three one-hour meal breaks and eight hours for sleep each day.[2]

---

Notwithstanding the provisions of this subdivision, when an individual employed by a third-party provider to provide "companionship services", as defined in the regulations of the federal Fair Labor Standards Act,1 is required to be present at a worksite for a period of not less than twenty-four consecutive hours, such individual and his or her employer may agree in writing to exclude a regularly scheduled sleeping period of not more than eight hours from hours worked, provided (i) adequate on-site sleeping facilities are furnished to such individual, and (ii) such individual receives at least five hours of sleep time. If the scheduled sleeping period is more than eight hours, only eight hours will be excluded. If the scheduled sleeping period is interrupted by an assignment to work, the interruption shall be counted as hours worked. If such individual does not receive at least five hours of sleep time during the scheduled sleeping period, the entire sleeping period shall be considered hours worked. The provisions of this subparagraph shall be effective on and after the effective date of the United States Department of Labor's Final Rule concerning the Application of the federal Fair Labor Standards Act to Domestic Service published in the Federal Register of October 1, 2013.

[2] Defendants state in their *Answer* that starting in 2018, they added an additional 45 minute unpaid break to the schedule of their PCAs.

4.     Defendants' HHAs are routinely interrupted during their scheduled mealtimes to assist Defendants' clients.  Defendants' PCAs are frequently interrupted during the night to help Defendants' clients use the restroom or turn them over in bed to prevent bedsores.  Defendants' PCAs routinely fail to get five hours of uninterrupted sleep time because of these frequent interruptions.

5.     Defendants failed to record all hours worked by their PCAs.  Defendants assign their PCAs to live with their clients, knowing their work routinely occurs at all hours of the day and night.  Defendants provide their PCAs with timesheets, that do not "provide specific space for PCAs to record any interruptions to their break time or sleep time" and (ii) provide for regularly scheduled sleeping period.  As a result, Defendants' PCAs do not record the times they are interrupted from their meals and sleep, Defendants do not count all hours their PCAs work and, Defendants do not pay their PCAs for all the hours they work. Defendants have actual and constructive knowledge that their PCAs work during their meal breaks and are interrupted during their sleep time because their PCAs reported these interruptions to Defendants. Although Defendants amended their old paper timesheets, the new timesheets (paper and electronic) continue to not accurately count all their hours PCAs worked.

6.     As a result, Defendants kept hundreds of thousands of dollars in wages that it should have paid to Plaintiff and the class, all in violation of state and federal wage and hour laws.

## II.     JURISDICTION AND VENUE

7.     This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8.      This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 since they are so related to her FLSA claims that they form part of the same case or controversy.

9.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) because the acts or omissions giving rise to claims in this Complaint took place in this judicial district.

## III.    THE PARTIES

10.     Plaintiff, Phillis Headly, is an individual residing within this judicial district.  She worked as an HHA for Defendants from approximately April 3, 2016 to March 12, 2019.

11.     Defendant Liberty Homecare Options, LLC is a corporation organized and existing under the laws of the state of Connecticut.  Its principal place of business is located at 26 Hart Street, New Britain, CT 06052.

12.     At all relevant times, Defendant Liberty Homecare Options, LLC employed, and/or continue to employ, Plaintiff and each of the HHAs within the meaning of the FLSA and the Connecticut Minimum Wage Act.

13.     Defendant Lucia Devivo Catalano is the only named principal of Defendant Liberty Homecare Options, LLC on Connecticut's Secretary of State Business Listings.

14.     As such, Defendant Catalano actively manages, supervises, and directs the day-to-day business affairs and operations of Defendant Liberty Homecare Options, LLC.

15.     As owner and sole named principal of Defendant Liberty Homecare Options, LLC, Defendant Catalano directly, or through her delegates, interviewed and

hired personnel, determined their rates of pay and company policies, assigned duties and answered questions from employees regarding their pay.

16.     As such, Ms. Catalano acted at all times material herein directly and indirectly in the interest of  Liberty Homecare Options, LLC in relation to their employees and was, and is, therefore, an employer of said employees within the meaning of the Fair Labor Standards Act.

17.     At all relevant times, Defendant Lucia Devivo Catalano, as owner and president of Defendant Liberty Homecare Options, LLC, has been "ultimate responsible authority" within Liberty Homecare Options, LLC "to set the hours of employment" and to "pay wages" as to the named Plaintiff and all of Defendants' HHAs and is therefore "the specific cause of the wage violation" alleged within the meaning of the Connecticut Minimum Wage Act.

18.     At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

19.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

20.     Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C.§216(b). The named Plaintiff's written consent is attached hereto and incorporated by reference.

## IV.     LEGAL PRINCIPLES

21.      Employers must pay overtime to their non-exempt workers who work over 40 hours in a work week. 29 U.S.C. Sec. 201, *et seq*.; C.G.S. Sec. 31-58, *et seq*.

22.     Employers must pay wages during an employee's meal breaks if the employee's mealtime is spent predominantly for the benefit of the employer. *Reich v. S. New Eng. Telecomms. Corp.,* 121 F.3d 58, 64 (2d Cir.1997); 29 C.F.R. Sec. 785.19 and 29 C.F.R. Sec. Sec. 525.102.

23.     Employers must pay their "live-in domestic service" employees for their entire eight-hour sleep period unless they ensure those employees get at least five hours of uninterrupted sleep time during their sleep periods.  29 C.F.R. Sec. 785.22 and 29 C.F.R. Sec. 552.102.

24.     Domestic service employees and their employers can exclude "by agreement between themselves, the amount of sleeping time, mealtime and other periods of complete freedom from all duties[.]"  29 C.F.R. § 552.102(a).

25.     "In the case of an employee who resides on the premises, the employer ***shall keep a copy of the agreement*** specified by § 552.102 and make, keep, and preserve a record showing the exact number of hours worked by the live-in domestic service employee." 29 C.F.R. § 552.110(b). (Emphasis added).

26.     Under Connecticut law, third-party employers of caregivers can agree with their employees "in writing to exclude a regularly scheduled sleeping period of not more than eight hours from hours worked…" C.G.S. Sec. 31-76b(2)(D).

27.     Employers have a "non-delegable" duty under the FLSA to maintain accurate records of its employees' hours.  *Kuebel v. Black & Decker Inc*., 643 F.3d 352, 363 (2d Cir. 2011) (citing 29 U.S.C. § 211(c)); *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959) (Friendly, J) (employers cannot discharge their duty of accurate record keeping and appropriate payment to their employees).

28.     "[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours."  *Kuebel,* 643 F.3d at 363; *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir.1998).

29.     Employers are responsible for paying overtime even when employees do not accurately record their time.  *See, Kuebel*, 643 F.3d at 363 ("[T]he fact that an employee is required to submit his own timesheets does not necessarily preclude him from invoking *Anderson's* standard where those records appear to be incomplete or inaccurate."); *also McGrath v. Cent. Masonry Corp*., 2009 U.S. Dist. LEXIS 94870, *17 (D. Colo. Sept. 29, 2009) ("The burden to maintain accurate records falls on the employer regardless of whether the employee is responsible for recording his own hours on a time sheet. … Indeed, the Supreme Court's reasoning in *Anderson* makes it clear that an employer should not benefit from its own failure to maintain an adequate and accurate record-keeping system.").

## V.     FACTS

30.     Defendants hired Plaintiff to work as an PCA on April 3, 2016 and she worked for Defendants until March 12, 2019.

31.     At all relevant times, Defendants have employed approximately 200 PCAs in Connecticut.

32.     Defendants assign their PCAs to live on-site with their clients because those clients can, and very frequently do, require assistance at any hour of the day.

33.     Defendants assign their PCAs non-exempt duties including: activities of daily living, including cooking for and serving breakfast, lunch and dinner to customer;

bathing customer as needed; assisting customer change clothing and underwear/diaper during the day and night as needed; helping customer put on and take off customer's clothes every day; sitting with customer and watch customer eat food and watch television and; physically watching over customer at all times and remaining within eye and earshot of customer, including placing an electronic monitoring device in customer's room to monitor to customer at all times including at nighttime; assisting customer with incontinence; assisting customer with personal hygiene; assisting customer with taking medication and; escorting customer for medical appointments.

34. Defendants assign their PCAs to sleep on-site so that they can help their clients with tasks including using the restroom or turn them over to prevent bed sores when needed.

35. Prior to April 2018, Defendants paper timesheets allowed their PCAs to have regularly scheduled sleeping period. After April 2018, Defendants revised their timesheets and adopted a new time recording system for payroll that comprised of a breaktime sheet and an electronic visit verification ("EVV"). the EVV. This new timesheets (paper and electronic) no longer provide regularly scheduled sleeping period to Plaintiff and all other similarly situated PCAs.

36. Over a 7-day work week, this schedule results in a minimum of 91 hours of work time (7 days x 13 hours = 91 hours), 51 of which is overtime.

37. During her employment, Plaintiff worked during her meal breaks to provide assistance to Defendants' client who required constant monitoring since he had a pacemaker installed, he was on a wheelchair and used oxygen tank for breathing.

38.     Plaintiff reported to her supervisor that she was working during her meal breaks to provide assistance to their client.

39.     Defendants improperly deducted the full 21 hours for meal breaks each week although Defendants knew or had constructive knowledge that Plaintiff worked through her lunch breaks to provide assistance to its clients.

40.     Plaintiff, and Defendants' other PCAs, are or were frequently interrupted during their sleep and meal breaks to care for Defendants' clients. Defendants' clients frequently needed to be attended to during the night for such reasons as trips to the bathroom, dementia, insomnia, to monitor clients' medical device such as a ventilator or breathing machine with its oxygen tank, or if a client is in hospice, to turn them over every two hours to prevent bed sores.

41.     In fact, Defendants' clients frequently interrupted Plaintiff and other PCAs so much that they were unable to have at least five hours of uninterrupted sleep time per night. Defendants were aware of these sleep interruptions at night because Plaintiff and other PCAs, from time to time, informed Defendants of these interruptions. But Defendants never modified its time sheets or took any other steps to accurately record all hours worked by Plaintiff and other PCAs.

42.     Defendants improperly deducted the full 56 hours for sleep time each week although Defendants knew or had constructive knowledge that Plaintiff's sleep was so frequently interrupted to provide assistance to Defendants' clients that she rarely, if ever, got five consecutive hours of uninterrupted sleep during the night.

43.     Defendants failed to ensure that they accurately recorded all the

work their PCAs, including Plaintiff, performed. All PCAs who worked at least one 24-hour shift were not paid for "all the time" they worked as required by CWA, Conn. Gen. Stat. § 31-76b(2).

44.   Defendants provided PCAs with paper timesheets that did not include a place on their timesheets for their PCAs to record their meal break and sleep interruptions. As a result, Plaintiff, and Defendants' other Connecticut PCAs, did not have a place to record all their hours worked, and did not include the interruptions to their meal breaks and sleep time.

45.   Defendants provided PCAs with payroll timesheets (paper and electronic) that do not record all the times PCAs worked when their meal times and sleeping time were interrupted and when their sleeping period was not regularly scheduled.

46. Only the "number of hours" that "was initialed" in the timesheets would "go to payroll" to pay the PCA for the workweek on payday.

47. The CWA requires that Defendants pay the PCAs for "all time" they worked  except if "regularly scheduled sleeping period" is excluded by agreement in writing. See, Conn. Gen. Stat. § 31-76b(2). Defendants did not allow regularly scheduled sleeping period and did not count as hours worked, the 8 hours sleeping period that was not regularly scheduled.

48.   For example, during the week of October 28, 2018 to November 3, 2018, Plaintiff worked as a live-in PCA for all seven days of the week. According to her assigned schedule, she worked seven 24-hour shifts, totaling 168 hours that week. Defendant paid her $1,176.65 for only 91-hours of her work that week.

49.     During that week of October 28, 2018 to November 3, 2018, Defendants admitted that they did not provide Plaintiff and all other similarly situated PCAs with a regularly scheduled sleeping period during each of the seven 24-hour shifts that week. As such, Defendants should have counted the 8 hours of the sleeping period as hours worked during each of the seven 24-hour shifts that week.

50.     Defendants did not count and pay Plaintiff for any of the 56-hours of the sleeping period that week that was not regularly scheduled. Defendants owe Plaintiff and each of the similarly situated PCAs an additional sum of $121.20 for each shift of 24-hours for not allowing Plaintiff and PCAs a regularly scheduled sleeping period.

51.     During the week of October 28, 2018 to November 3, 2018, Plaintiff worked through her meal periods and her sleeping period assisting Defendants' customer, who required constant monitoring due to his severe health conditions, mentioned above.

52.     Defendants did not count and pay Plaintiff for the interruptions to her meal breaks and sleep times during each of the seven 24-shifts that week. Defendants owe Plaintiff an additional sums for all times that she worked during each shift of 24-hours due to interruptions to her meal breaks and sleep times.

53.     As a result, Defendants knowingly and willfully failed to pay Plaintiff and the other PCAs the full wages that they were due and instead retained those wages for their own use and benefit.

54.     The Defendants and Plaintiff agreed that the statute of limitations will be tolled for Headly and the class members from January 15, 2020 until either the Defendants or Plaintiff informed the other party that the tolling period ceased.  As of the date of filing this complaint, the Defendants have not informed Plaintiff that the tolling

period ceased, and therefore, the claims of Plaintiff and the class are tolled from January 15, 2020 until the present.

## VI.     THE COLLECTIVE ACTION

55.     Plaintiff brings Counts One and Three on behalf of herself and all other PCAs Defendants employed as domestic service workers in Connecticut who worked at least one 24-hour shift during the period of January 15, 2017 until the date of final judgment in this matter who Defendants assigned to their clients.

56.     Plaintiff brings this count under 29 U.S.C. § 216(b) of the Fair Labor Standards Act. Plaintiff and the other PCAs are similarly situated in that they are all subject to Defendants' common plan or practice of requiring them to live on the premises of their clients because they needed assistance at all hours, and failing to provide them with time sheets (paper and electronic) that were used for payroll and that accurately counted all the hours they work.

## VII.    THE CONNECTICUT RULE 23 CLASS

57.     Plaintiff brings Counts Two and Four under the Connecticut Wage Act, C.G.S. §§ 31-58 *et seq*., and Rule 23 of the Federal Rules of Civil Procedure, for herself and on behalf of a class consisting of all PCAs Defendants employed as domestic service workers in Connecticut who worked at least one 24-hour shift during the period of January 15, 2018 until the date of final judgment in this matter who worked at least one week for Defendants.

58.     Class certification for these Connecticut law claims is appropriate under Fed. R. Civ. P. 23 (a) and Fed. R. Civ. P. 23 (b)(3) because all the requirements of the Rules are met.

59.     The class is so numerous that joinder of all members is impracticable. Upon information and belief, Defendants employed approximately 200 PCAs who worked at least one 24-hours overnight shift in Connecticut during the past two (2) years.

60.     There are questions of law and fact common to the class, including whether Defendants use timesheets (paper and electronic) for payroll which did not provide space to count all hours their live-in PCAs worked due to interruptions to mealtimes and sleeping period; whether Defendants use timesheets (paper and electronic) for payroll which did not provide regularly scheduled sleeping period for their live-in PCAs, and did not count these excluded hours as hours worked, and; whether Defendants fail to count all hours their live-in PCAs worked, including improperly deducting additional 45 minute unpaid break for personal time  in violation of CWA, Conn. Gen. Stat. §§ 31-68,  et seq.

61.     The named Plaintiff's claims are typical of those of the class members. Plaintiff's claims encompass the challenged practices and course of conduct of Defendants. Furthermore, Plaintiff's legal claims are based on the same legal theories as the claims of the putative class members. The legal issues as to which federal and state laws are violated by such conduct apply equally to Plaintiff and to the class.

62.     The named Plaintiff will fairly and adequately protect the interests of the class. The Plaintiff's claims are not antagonistic to those of the putative class and she has hired counsel skilled in the prosecution of class actions.

63.     Common questions of law and fact predominate over questions affecting only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. This proposed class action under Fed. R. Civ.

P. 23 presents few management difficulties, conserves the resources of the parties and the court system, protects the rights of each class member and maximizes recovery to them.

### VIII.   LEGAL CLAIMS

**COUNT ONE:** *Phyllis Headly, individually and on behalf of others similarly situated v. Liberty Homecare Options, LLC*: **VIOLATION OF THE FAIR LABOR STANDARDS ACT, 21 U.S.C. Section 201,** *et seq.*

64.    Based on the foregoing, Defendant Liberty Homecare Options, LLC's conduct in this regard was a willful violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

65.    Plaintiff and all other similarly situated PCAs who opt into this litigation are entitled to compensation for all overtime hours worked, liquidated damages, attorneys' fees and court costs.

**COUNT TWO:** *Phyllis Headly, individually and on behalf of others similarly situated v. Liberty Homecare Options, LLC*: **VIOLATION OF THE CONNECTICUT WAGE ACT, C.G.S. Section 31-58,** *et seq.*

66.    Based on the foregoing, Defendant Liberty Homecare Options, LLC's conduct in this regard was a violation of the Connecticut Wage Act, C.G.S. §§ 31-58, *et seq.*

67.    Accordingly, Plaintiff and all other HHAs in Connecticut are entitled to compensation for all overtime hours worked, penalty damages, attorneys' fees and court costs.

**COUNT THREE:** *Phyllis Headly, individually and on behalf of others similarly situated v. Lucia Devivo Catalano*: **VIOLATION OF THE FAIR LABOR STARDARDS ACT, 21 U.S.C. Section 201,** *et seq.*

68.    Based on the foregoing, Defendant Lucia Devivo Catalano's conduct in this regard was a violation of Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

69.     As owner of Liberty Homecare Options, LLC, she is the "ultimate responsible authority" and the cause for these violations.

70.     Defendant Lucia Devivo Catalano is liable to Plaintiff, and all other similarly situated HHAs who opt into this litigation for compensation for all overtime hours worked, liquidated damages, attorneys' fees, and court costs.

**COUNT FOUR:**     ***Phyllis Headly, individually and on behalf of others similarly situated v. Lucia Devivo Catalano:* VIOLATION OF THE CONNECTICUT WAGE ACT, C.G.S. section 31-58, *et seq.***

71.     Based on the foregoing, Defendant Lucia Devivo Catalano's conduct in this regard was a violation of the Connecticut Wage Act, C.G.S. §§ 31-58, *et seq.*

72.     As owner of Liberty Homecare Options, LLC, she is the "ultimate responsible authority" and the cause for these violations.

73.     Defendant Lucia Devivo Catalano is liable to Plaintiff, and all other HHAs for compensation for all overtime hours worked, penalty damages, attorneys' fees, and court costs.

**COUNT FIVE**:     ***Phyllis Headly, individually v. Liberty Homecare Options, LLC and Lucia Devivo Catalano*: VIOLATION OF THE FAIR LABOR STANDARDS ACT, 21 U.S.C. Section 201, *et seq.***

74.     The ordinary statute of limitations of a claim under the FLSA is two years, except that a cause of action arising out of a willful violation of the statute can be brought within three years.  29 U.S.C. Sec. 255(a).

75.     However, courts can equitably toll Sec. 255(a) to avoid "inequitable circumstances."  *Darowski v. Wojewoda*, 2017 U.S. Dist. LEXIS 208122, *14 (D. Conn. Dec. 19, 2017) (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)).

76.     Courts in this district, and nationwide, hold that when an employer fails to

post the required wage and hour posters, equitable tolling is appropriate to prevent

inequity until the Plaintiff consults with an attorney or otherwise learns of her rights.

*E.g., Lin v. Brennan*, 2011 U.S. Dist. LEXIS 132025, *14  (D. Conn. Nov. 15, 2011)

(Droney, J) ("Defendants' failure to post any notice as to their employee's rights under

state and federal labor laws tolls the statute of limitations for Plaintiffs' CMWA claim as

well."); *Asp v. Milardo Photography, Inc.*, 573 F. Supp. 2d 677, 697-98 (D. Conn. 2008);

*Rescia v. Shamas*, 2015 U.S. Dist. LEXIS 191706, *6 (D. Conn. Dec. 22, 2015) ("Where

an employer fails to post the required [wage and hour] notices, courts have held that

equitable tolling applies, but only until the employee retains an attorney or obtains

knowledge of his rights."); *Darowski*, 2017 U.S. Dist. LEXIS 208122 at *17; *Callowhill

v. Allen-Sherman-Hoff Co*., 832 F.2d 269, 272 (3d Cir. 1987) ("[A]n employer's neglect

to post the notice . . . will toll the running of the period for filing the administrative

charges, at least until the 'aggrieved person seeks out an attorney or acquires actual

knowledge of his rights under the [ADEA].'"); *EEOC v. Ky. State Police Dep't*, 80 F.3d

1086, 1096 (6th Cir.1996) ("If an employer fails to . . . post[] the required ADEA notices,

'the charge-filing period will not begin to run until the employee either retains an attorney

or acquires actual knowledge of his rights under the ADEA.'").

77. Defendants, as employers under the FLSA, are required by 29

C.F.R. § 516.4 "to post and keep posted a notice explaining the Act, as prescribed by the

Wage and Hour Division, in conspicuous places in every establishment where such

employees are employed so as to permit them to observe readily a copy." *Id*.

78. Defendants failed to post or keep posted such notice required by 29

C.F.R. § 516.4 in conspicuous places where Plaintiff, Phyllis Headly, was employed to permit her to observe readily a copy.

79.     Accordingly, Plaintiff's individual FLSA claim is subject to equitable tolling, and is not limited to January 17, 2017.

80.     Defendants are additionally liable to Plaintiff for overtime under the FLSA from April 3, 2016 until January 16, 2017 (the day before the FLSA collective class period begins) for compensation for all overtime hours worked, liquidated damages, attorneys' fees, and court costs.

**COUNT SIX**:     ***Phyllis Headly, individually v. Liberty Homecare Options, LLC and Lucia Devivo Catalano*: VIOLATION OF THE CONNECTICUT WAGE ACT, C.G.S. section 31-58, *et seq.*.**

81.     Employers must, under Connecticut law, hang required wage and hour posters where their employees can see them, or otherwise have access to them.  C.G.S. § 31-66.

82.     When employers fail to provide posters for their workers, informing them of their rights under the CMWA, equitable tolling is appropriate until the Plaintiff seeks the advice of counsel or learns of their rights some other way.  *Asp*, 573 F. Supp. 2d at 697-98; *Rescia*, 2015 U.S. Dist. LEXIS 191706 at *6; *Darowski*, 2017 U.S. Dist. LEXIS 208122 at *17; *Lin*, 2011 U.S. Dist. LEXIS 132025 at *14.

83.     Defendants, as employers under the CMWA, and subject to a minimum fair wage order, are required to "keep a copy of such order and the regulations issued by the Labor Commissioner posted at the place of employment where it can be read easily by the employees [and] furnish copies of orders and regulations on request, without charge." C.G.S. § 31-66.

84.     Defendants failed to post or distribute to Plaintiff, Phyllis Headly, such minimum wage order and regulations issued by the Labor Commissioner.

85.     Defendants failed to send Plaintiff, Phyllis Headly, an email containing such minimum wage order and regulation issued by the Labor Commissioner so that she could learn her rights to overtime.

86.     Plaintiff did not learn about her rights to collect overtime until she consulted with an attorney on November 18, 2019.

87.     Accordingly, Plaintiff's individual CWA claim subject to equitable tolling, and is not limited to January 17, 2017.

88.     Defendants are liable to Plaintiff for overtime under the FLSA from April 3, 2016 until January 16, 2017 (the day before the CWA class period begins) for compensation for all overtime hours worked, penalty damages, attorneys' fees, and court costs.

**DEMAND FOR RELIEF**

Plaintiff claims:

a. Designation of this action as a collective action pursuant to the FLSA and prompt issuance of notice pursuant to 29 U.S.C. § 216(b);

b. Certification of the Connecticut class action pursuant to Fed. R. Civ. P. 23(b)(3) and the appointment of Plaintiff and her counsel to represent those classes;

c. An award of unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

d. An award of unpaid overtime wages under the Connecticut Wage Act, C.G.S. § 31-68;

e. An award of liquidated damages under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

f. An award of penalty damages under Connecticut Wage Act, C.G.S. § 31-68;

g. Attorneys' fees under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

h. Attorneys' fees under the Connecticut Wage Act, C.G.S. § 31-68;

i. Interests and costs;

j. Injunctive relief in the form of an order directing Defendant to comply with the Connecticut Wage Act; and

k. Such other relief as in law or equity may pertain.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury by all issues so triable.

Phyllis Headly, individually and on behalf of
other similarly situated individuals


By:/s// ct05114
Nitor V. Egbarin, ct05114
Law Office of Nitor V. Egbarin, LLC
100 Pearl Street, 14th Floor
Hartford, CT 06103-3007
Tel: (860) 249-7180
Fax: (860) 408-1471
E-mail: NEgbarin@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2021, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail for anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ *Nitor V. Egbarin*