## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHYLLIS HEADLY,<br>    *Plaintiff*, | )<br>)<br>) |
| v. | )     3:20-CV-00579 (OAW) |
| | ) |
| LIBERTY HOMECARE OPTIONS,<br>LLC, and LUCIA DEVIVO CATALANO,<br>    *Defendants*. | )<br>)<br>)<br>) |
| | ) |

### ORDER ON CLASS AND COLLECTIVE CERTIFICATION

**THIS CAUSE** is before the court upon Plaintiff's Re-Filed Motion for Conditional

Certification, *see* ECF No. 61 ("Renewed Collective Motion"), and Plaintiff's Re-Filed

Motion for Class Certification, *see* ECF No. 62 ("Renewed Class Motion" and, together

with the Renewed Collective Motion, "Motions").  The court has reviewed the Motions,

Defendants' oppositions to the Motions, *see* ECF Nos. 63 and 64, Plaintiff's replies in

support of the Motions, *see* ECF Nos. 66 and 67, oral arguments presented by counsel,

and the record in this case, and has considered the facts and law relevant thereto.


I.    **BACKGROUND**

It is axiomatic that non-exempt[1] employees must be paid for all the hours they

work, and that they are entitled to overtime pay (time-and-a-half) for all hours in excess

---

[1] Informally, non-exempt employees commonly are called "hourly" employees, whereas exempt employees typically are referred to as "salaried" employees.  *See Klapatch v. BHI Energy I Power Servs., LLC*, No. CV 18-11581-RGS, 2019 WL 859044, at *1 (D. Mass. Feb. 22, 2019); *Compton v. Am. Mgmt. Servs., Inc.*, No. CV 10-09116-RGK (EX), 2011 WL 13217963, at *1 n.1 (C.D. Cal. Feb. 24, 2011) ("Exempt employees are those who qualify under the executive, administrative, or professional exemptions [as defined in the Fair Labor Standards Act], are often paid on a salaried basis, and are not required to receive overtime pay.  Non-exempt employees are those who receive at least a minimum hourly wage and appropriate overtime pay.") (internal citations omitted).

of 40 that they work in a workweek.  29 C.F.R. §§ 778.101, 778.107; Conn. Gen. Stat.

Ann. §§ 31-76b(1), 31-76c.[2]  This is no less true for non-exempt employees who work

24-hour shifts in a residential ("live-in") setting with their clients.  However, federal

regulations allow employers to avoid paying such non-exempt workers for meal times

(of up to three hours) and for a "regularly scheduled sleeping period" (of not more than

eight hours) in each 24-hour shift, as long as certain prerequisites are satisfied,

including that "the employee can usually enjoy an uninterrupted night's sleep."  29

C.F.R. § 785.22(a).  Similarly, Connecticut law does not include meal periods in an

employee's hours worked, and also allows third-party employers of individuals providing

companionship services to exclude a "regularly scheduled sleeping period" of not more

than eight hours from the employee's compensable (payable) time, provided that the

employer and employee agree to the exclusion (the unpaid time) in writing.  Conn. Gen.

Stat. Ann. § 31-76b(2).  Under both state and federal law, if the employee is called to

duty during their meal break or sleeping period, then the time spent working must be

compensated.  29 C.F.R. §§ 785.22(b), 785.19; Conn. Gen. Stat. Ann. § 31-76b(2).

And according to both state and federal law, if the employee does not get at least five

hours of sleep during the sleeping period, then the entire eight-hour sleeping period

must be counted as hours worked.  29 C.F.R. § 785.22(b); Conn. Gen. Stat. Ann. § 31-

76b(2)(D).

---

[2] The relevant federal regulations were promulgated by the Department of Labor under the Fair Labor Standards Act.  Connecticut law parallels the federal regulations for the provisions relevant to this case.

Defendant Liberty Homecare Options ("Liberty") is a private company that provides Personal Care Assistants ("PCAs")[3] to its clients to help with the non-medical tasks of daily living, such as preparing and serving food, changing clothing, and maintaining personal hygiene.  ECF No. 59 at ¶ 3, 12; ECF No. 63 at 4.  Some PCAs live-in with their assigned clients.  ECF No. 59 at ¶ 32; ECF No. 63 at 1.  Defendant Lucia Devivo Catalano is the owner of Liberty, and Plaintiff asserts that for all relevant times, Ms. Catalano was the ultimate responsible authority with respect to her employees' hours and compensation.[4]  ECF No. 59 at ¶¶ 14-17; ECF No. 63 at 1 n.1.

Plaintiff worked as a PCA for Liberty from March 2016[5] until March 2019.  ECF No. 61-1 at 3; ECF No. 63 at 4.  When Plaintiff began her employment with Liberty, she signed an agreement that allowed Liberty to exclude from her compensable time (per 24-hour shift) eight hours of sleeping time and three, one-hour meal breaks.  ECF No. 61-1 at 3; ECF No. 63 at 4-5.  Liberty initially used paper timesheets that specifically noted a sleeping period, but that Plaintiff contends did not otherwise provide space to properly record all the hours a PCA worked.  ECF No. 61-1 at 5.  Published in Plaintiff's employment agreement, in her manual, and on the timesheets themselves, was Liberty's policy of requiring their caregivers to receive at least 8 hours of sleep, and at least 5 hours of uninterrupted sleep, per 24-hour shift.  ECF No. 63 at 5.  Her

---

[3] Throughout the original Complaint, and at times in subsequent filings, Plaintiff refers to this position as that of a "Home Health Aide" or "HHA."  It appears settled from the briefings, however, that the appropriate job title is PCA, not HHA.

[4] Defendants footnote their contention that Ms. Catalano is not an "employer" within the meaning of the Fair Labor Standards Act or under Connecticut law, but they have not moved to dismiss her from the suit. The Motions are an inappropriate vehicle for adjudicating this issue, as it has not been briefed, so the court will not address it here.

[5] The First Amended Complaint states that Plaintiff started in April 2016, but the parties agree in their briefings that March is the correct month.

timesheets and manual also stated that any interruptions of sleeping time must be called into the office within 24 hours.  *Id.*

In or around April 2018, Liberty moved to a new timekeeping regime in which PCAs used an electronic system to record the start and end times for their shifts, but recorded interruptions to their breaktimes, meal times, and sleeping periods on paper. ECF No. 61-1 at 5-6; ECF No. 63 at 6-7.[6]  At the same time, Liberty began requiring its PCAs to take an additional 45-minute break, which requirement was memorialized in a new employment agreement with Plaintiff.  ECF No. 61-1 at 2-3; ECF No. 63 at 6-7. The new timesheets and employment agreement again instructed Plaintiff (1) that she was expected to get eight hours of sleep in each 24-hour shift, at least five of which had to be uninterrupted, (2) that she should try to make up any lost breaktime, meal time, or sleeping time at another point in her shift, and (3) that she should call the office and report if she had been unable to catch up on the lost time.  ECF 63 at 6-8.

Liberty contends that Plaintiff's timesheets reported no interruptions to breaktimes, meal times, or sleeping periods from April 2018 until she left the company in March 2019.  ECF 63 at 8.  Liberty continued to automatically deduct all breaktimes, meal times, and sleeping periods from Plaintiff's compensable hours until she left the company.  ECF 59 at ¶¶ 39, 42.

Plaintiff contends, though, that throughout her time at Liberty, she was often required to work during her breaktimes, meal times, and sleeping periods to assist her client, whose limitations were such that he required constant attention.  She states she was also frequently unable to get five uninterrupted hours' sleep.  ECF 59 at ¶¶ 37-38,

---

[6] Defendants clarify that the electronic system was implemented prior to April 2018, *see* ECF No. 64 at 24 n.7, but the exact time of the change is immaterial to this discussion.

40-41.  Plaintiff alleges that she informed Liberty early in her time with them that she was working during her breaks and sleeping periods, but she was told that it did not matter; she would not be paid for the interruptions, and she was expected to make up the lost time elsewhere during her shift.  ECF No. 61-1 at 7, 16.

## II.   PROCEDURAL HISTORY

Plaintiff filed her Complaint on April 28, 2020, seeking backpay for alleged violations of the Fair Labor Standards Act ("FLSA") and the Connecticut Minimum Wage Act ("CMWA").[7]  ECF No. 1.  Defendants timely answered without first moving to dismiss any of Plaintiff's claims.  ECF No. 15.  On November 27, 2020, Plaintiff moved, for the first time, for conditional certification of a proposed collective under the FLSA ("First Collective Motion").  ECF No. 24.  Defendants opposed certification, and the court (*Hon. Jeffrey Alker Meyer, J.*) held a Zoom hearing on the First Collective Motion on January 26, 2021.  ECF Nos. 30, 38.  Before a ruling was issued thereupon, Plaintiff moved to certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure ("First Class Motion").  ECF No. 40.  The plaintiff also filed, without leave of court, an affidavit from another PCA to supplement her First Collective Motion.  ECF No. 37.

Judge Meyer denied the First Collective Motion on June 1, 2021.  ECF No. 45. His Honor concluded that Plaintiff had failed to show that there were other similarly-situated plaintiffs.  More specifically, the court found that Plaintiff's Complaint asserted

---

[7] Plaintiff at times refers to the law as the "CWA" or the "Connecticut Wage Act," but title 31, chapter 558 of the Connecticut General Statutes does not itself provide a short title for the law.  Caselaw suggests that within Connecticut and this district, "Connecticut Minimum Wage Act" is more often used, and so that is the title the court will use throughout this ruling.  *See Belgada v. Hy's Livery Serv., Inc.*, No. 3:18-CV-177 (VAB), 2019 WL 632283, at *1 (D. Conn. Feb. 14, 2019).

claims based on the insufficiency of the timekeeping system Liberty was using, but that

the timesheets themselves were not facially deficient, and that Plaintiff had failed to

allege that she and the members of the proposed collective were denied compensation

to which they were entitled despite either (1) having accurately recorded all the hours

they worked, or (2) Liberty's actual or constructive knowledge that they were not

compensated for all the hours they were working.  Judge Meyer found Plaintiff's

argument on this point to be conclusory and without sufficient supporting factual

allegations, relying as it did solely on her own testimony, which showed only a

speculative belief that others had suffered the same violation she alleged.  The court

declined to take judicial notice of several similar actions that had been filed in state

court against Defendants, as the court was unable to view the cases using the citations

Plaintiff had provided.  The court also did not consider the supplemental affidavit

Plaintiff had filed, citing principles of fairness and judicial economy.  In light of that

affidavit, however, the court did grant Plaintiff leave to amend her motion.

The following motion practice ensued thereafter: Plaintiff moved to amend her

pleading, ECF No. 41, which motion Judge Meyer at first denied for failure to comply

with the Local Rules.  ECF No. 49.  Because her motion to amend had been denied, her

First Class Motion and a renewed motion for conditional certification, both of which

relied upon her amended pleading, also were denied.  ECF No. 50.  Eventually, she

was granted leave to amend the Complaint following oral argument on a renewed

motion to amend, ECF Nos. 51, 57 and 58, and she filed the First Amended Complaint

("FAC"), which is the operative pleading, on September 21, 2021.  ECF No. 59.  She

filed the Renewed Collective Motion and the Renewed Class Motion on October 8 and 11, respectively.  ECF Nos. 61, 62.

The instant case was transferred to the undersigned judge on December 21, 2021.  ECF No. 68.  The court heard oral argument on the Motions on March 15, 2022. As explained through the reasoning that follows, each motion is **GRANTED in part.**

### III.    RENEWED COLLECTIVE MOTION

#### a.  Legal Standard

The FLSA creates a collective right of action whereby a single employee can file a claim for backpay, and other similarly-situated employees can opt in to (or join) the lawsuit.  29 U.S.C. § 216(b).  "The unique FLSA collective differs from a Rule 23 class because plaintiffs become members of the collective only after they affirmatively consent to join it."  *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016).  Consequently, and in contrast to a Rule 23 class, a conditionally certified FLSA collective does not have an independent legal status.  *Id.*

There is a two-step process for certifying a collective under the FLSA.  First, a named plaintiff must make a "modest factual showing" that they and others were "victims of a common policy or plan that violated the law."  *Id.*  A "modest factual showing" requires more than unsupported allegations, "but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist . . . ."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (italics in original).  Once that showing has been made, the court may order that notice be sent to other potential plaintiffs so that they may decide whether to

join the action.  *Id.*  At step two, after the factual record has been developed more fully,

the district court determines whether the opt-in plaintiffs actually are similarly situated to

the named plaintiff.  *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir.

2020), cert. dismissed, 142 S. Ct. 639 (2021).

### b.  Discussion

Counts One and Three of Plaintiff's FAC are asserted as collective action claims

brought on behalf of all PCAs employed by Defendants in Connecticut who have

worked at least one 24-hour shift since January 15, 2017.  In both of these Counts,

Plaintiff claims that Defendants have failed to pay Plaintiff and the other PCAs for all the

hours they worked in that Defendants unlawfully subtracted eight working hours from

each 24-hour shift, and because Defendants did not compensate the PCAs for

interruptions (to meal times[8] and to sleeping periods) about which Defendants knew or

should have known.[9]  With respect to the former theory of recovery, Plaintiff asserts that

Liberty did not satisfy the prerequisites of the regulation, and therefore was not entitled

to make the automatic deductions.[10]  Specifically, Plaintiff alleges that Defendants did

---

[8] Plaintiff's arguments in the Renewed Collective Motion and the Renewed Class Motion focus primarily on interruptions to the sleeping period, but interruptions to meal times are also implicated, and so the court, like Defendants, includes those interruptions in this argument as well.

[9] Plaintiff also argues that the deduction of the additional 45-minute breaktime from the PCAs' compensable time was not authorized by Connecticut law, but Plaintiff cannot bring an FLSA claim under state law.  At oral argument, Plaintiff's counsel attempted to revise this claim to bring it within the ambit of the FLSA, arguing that were a PCA to take the 45-minute break in shorter increments, those shorter breaks would likely run afoul of FLSA regulations requiring short breaks to be paid.  *See* 29 C.F.R. § 785.18.  Because the FAC is completely devoid of any hint of this argument or any facts to support it, the court will not entertain it here.

[10] Plaintiff several times throughout the Renewed Collective Motion states that Defendants cannot carry their burden of showing that they qualified to make the automatic deductions, which statements Defendants decry as a misstatement of their burden as the nonmovants.  It is true that in a discussion on the merits, the employer bears the burden of proving that it is entitled to make these automatic deductions, *see Salazar v. Life Ambulance Serv., Inc.*, No. CIV.A.EP-99-CA-361EP, 2001 WL 685755, at *2 (W.D. Tex. Feb. 23, 2001), but this is not a discussion on the merits.  Therefore, the court construes these statements as an expression of Plaintiff's merits argument, not an abdication of her responsibility as the movant.  The burden indeed remains with the plaintiff (the moving party as to the instant motions).

not ensure that the PCAs slept the same hours each shift, and therefore did not provide a *regularly-scheduled* sleeping period within the meaning of the regulation.  She also argues that the regulation only permits an employer to make the automatic deduction where the employee usually is able to get an uninterrupted night's sleep, but that Plaintiff and the other PCAs usually were not able to get an uninterrupted night's sleep. And with respect to both theories of recovery, Plaintiff also asserts that Liberty's policy of requiring its PCAs to make up any lost sleeping time and breaktime is impermissible under the regulation.

### i.  Procedural argument

Before they address the substantive issue presented in the Renewed Collective Motion, Defendants first make the procedural argument that Plaintiff's theories of recovery for her overtime claim are new arguments that Plaintiff never raised in the FAC.  Although they do not request any specific relief on this point, the court will dispose of this argument in an abundance of caution.

The court disagrees.  A review of the FAC reveals that each of these acts is alleged within the body of the operative pleading.  Paragraph 41 of the FAC clearly contains allegations that Plaintiff and other PCAs informed Liberty that their sleeping periods were being interrupted, but that they were not compensated for that time.  And paragraphs 49 and 50 of the FAC clearly cover the issue of the regularly-scheduled sleeping period.  Therefore, the court finds that the proposed bases for Plaintiff's overtime claims adequately were asserted in the FAC.

### ii.  Similarly-situated individuals

The court now turns to the principal issue before it: whether Plaintiff has made a modest factual showing that there are other PCAs who also were not paid for all the hours for which they were entitled to payment.  Plaintiff asserts that she has adduced sufficient evidence to reach the low threshold for conditional certification.  She argues that the members of her proposed collective all had the same job title, duties, and hours, and that they all operated under the same policies of employment.  She points to her own deposition testimony to show that she had spoken with other PCAs over the years who had told her that they, too, had been working through their sleeping periods. She also has identified one other opt-in plaintiff, Nnyana Masoloko, who filed a sworn declaration stating (1) that she also had to wake up to help her client most nights but was not compensated for the interruptions in sleeping time, and (2) that she also attempted to inform Liberty of these interruptions but was told to make up the time elsewhere during her shift.  Finally, she has filed several exhibits showing telephone logs and paystubs from other PCAs whose hours worked indicate that their meal times and sleeping periods were regularly deducted and they were not paid for any interruptions that occurred in those pay periods, although those interruptions were documented in Liberty's call logs.  Those other PCAs, however, already have litigated their overtime claims in state court and separately have settled with Defendants.[11]

---

[11] These related cases are: *Rankiritlane v. Liberty Homecare Options, LLC*, No. CV-18-6042337-S (Conn. Super. Ct. 2018); *Mokobi v. Liberty Homecare Options, LLC*, No. CV-19-6046434-S (Conn. Super. Ct. 2019); *Letsatsi v. Liberty Homecare Options, LLC*, No. CV-19-6051312-S (Conn. Sup. Ct. 2019); *Kolobe v. Liberty Homecare Options, LLC*, No. CV-19-6050925-S (Conn. Super. Ct. 2019); and *Lekuntwane v. Liberty Homecare Options, LLC*, No. CV-19-6046435-S (Conn. Super. Ct. 2019).  Each complaint generally alleges that the named plaintiffs were working through their sleeping periods but that they were told that they would not be compensated for that time, even though they informed Liberty that they were not getting the full benefit of their sleeping periods.

Defendants respond that Plaintiff still has not cured the deficiencies of her First Collective Motion. They assert that the potential opt-in plaintiffs are not similarly situated, and that adjudicating their claims would require individualized questioning to ascertain whether they are entitled to backpay. They also argue that the evidence Plaintiff has cited to support her claim for conditional certification is inadmissible, irrelevant, and prejudicial, and that the additional individuals she identifies as being similarly situated already have litigated their claims and have settled with Defendants, such that they should be disregarded (as they presumably could not opt in to the present lawsuit).[12]  They also assert several arguments on the merits of Plaintiff's claims: that Plaintiff actually was given a regularly-scheduled sleeping period and that she was not interrupted during her breaktimes and sleeping periods.

The court need not address the merits-based arguments here because the merits of Plaintiff's claims "are irrelevant to the collective action inquiry, as long as [Plaintiff] assert[s] a plausible basis for [her] claim." *Perkins v. S. New England Tel. Co.*, 669 F. Supp. 2d 212, 219 (D. Conn. 2009); *see also Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 55 (S.D.N.Y. 2005) ("[A] court adjudicating a motion to authorize a collective action 'need not evaluate the merits of plaintiffs' claims in order to determine whether a 'similarly situated' group exists.'") (quoting *Krueger v. N.Y. Tel. Co.*, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993)).  The court finds that Plaintiff has asserted a plausible basis for her claims, both in the law and in the undisputed record evidence.  Plaintiff has

---

[12] Defendants also argue that the court should not consider the telephone logs and affidavits Plaintiff has provided because they were taken from other cases litigated by other PCAs, with the assistance of Plaintiff's counsel.  However, courts are permitted to take notice of other judicial proceedings.  And to the extent Defendants claim that Plaintiff's counsel has provided these documents inappropriately, these are issues for the other plaintiffs or for Defendants to take up in separate proceedings.

stated several theories of recovery rooted in the plain language of the relevant regulation, and although Defendants refute certain of her factual assertions, Plaintiff's allegations need only be facially sufficient, "even if such allegations conflict with the account asserted by the defendants." *Gui Zhen Zhu v. Matsu Corp.*, 424 F. Supp. 3d 253, 264 (D. Conn. 2020).  Moreover, it is undisputed that Liberty did not prescribe specific hours in which PCAs were to sleep, and that it required its PCAs to make up interruptions to their sleeping periods and to their meal times (instead of paying them for those interruptions), which form the basis for some of Plaintiff's legal arguments. It is clear that Plaintiff does have a plausible basis for her claims, and the court therefore will not enter into the merits at this point.

Turning to Defendants' other arguments, the court finds them unpersuasive. With respect to their objection to inadmissible evidence, Defendants have not cited to any authority that says that the evidence produced in support of conditional certification must be admissible later at trial, and caselaw actually indicates the opposite is true. *See, e.g., Boice v. M+W U.S., Inc.,* 130 F. Supp. 3d 677, 687 n.7 (N.D.N.Y. 2015) (surveying district courts around the country that do not require evidence reviewed at the conditional certification state to be admissible at trial).  Defendants assert that evidence from other prior actions would be hearsay, unduly prejudicial, and irrelevant, coming as it does from people who presumably cannot join as plaintiffs.  But "the court may rely on hearsay evidence asserted by [Plaintiff] to certify the collective action." *Gui Zhen Zhu*, 424 F. Supp. 3d at 264; *see also Zaniewski v. PRRC Inc.*, 848 F. Supp. 2d 213, 221 (D. Conn. 2012) ("On a motion for conditional certification courts in this Circuit regularly rely on hearsay evidence to determine the propriety of sending a collective

action notice.") (quoting *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 403 (S.D.N.Y. 2012)).  And the fact that other PCAs have brought suit to recover backpay clearly is not irrelevant to this action, as the present case also is a suit to recover overtime pay. Knowledge or mention of those other legal actions might be unduly prejudicial to a jury, but that is an issue to be determined at trial, should this case be resolved through that adversarial process, and should the plaintiff attempt to offer such evidence at such trial. The argument that (at this stage in the proceedings) the court should ignore presumably inadmissible evidence therefore is unavailing.

The court also is unpersuaded that the potential opt-in plaintiffs are not similarly situated because adjudicating their cases would require too much individualized inquiry. Defendants argue that because each PCA worked with a different client, the court would need to evaluate each PCA's living conditions and each client's needs.  It is true that determining whether other PCAs worked through their sleeping periods and whether they were usually able to have an uninterrupted night's sleep would require some individualized inquiry, but "conditional certification is appropriate even where the court would subsequently be required to conduct individualized factual inquiries . . . ."  *Gui Zhen Zhu*, 424 F. Supp. 3d at 267 (citing *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 390 (E.D.N.Y. 2010)) (internal quotation marks omitted).  And even if Defendants dispute whether all PCAs had sufficiently similar duties to be similarly situated, they do not dispute that the PCAs all operated under the same set of rules and employment policies instituted by Liberty, the legality of which is at the heart of Plaintiff's claims. Therefore, this argument also fails.

With respect to the evidence taken from previous lawsuits, there is no caselaw that addresses the precise circumstances presented here, where some of the other similarly-situated individuals perhaps could not opt in as plaintiffs because they separately have litigated their claims to completion.  There are analogous cases, but those have arrived at inconsistent conclusions.  The Fifth and Seventh Circuits appear to be the only appellate courts to have addressed the comparable issue of whether potential opt-in plaintiffs who are subject to arbitration agreements may be included in a collective, and those courts have held that it is improper to send notice to employees who would be ineligible to participate in the collective litigation.  *See In re JPMorgan Chase & Co.*, 916 F.3d 494, 502 (5th Cir. 2019); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1047 (7th Cir. 2020).  It should be noted, however, that both appellate courts place certain requirements upon the employer with respect to showing that the arbitration agreements are valid and binding and that they actually would preclude their signatories from participating in the collective action.  *See JPMorgan Chase*, 916 F.3d at 502-03 (finding that where there is a dispute as to the existence or validity of an arbitration agreement, the employer "has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for" any particular employee); *Bigger*, 947 F.3d at 1047 (holding that when an employer alleges that proposed collective members waived the right to participate in collective action through an arbitration agreement, a court may still "authorize notice to those individuals unless (1) no plaintiff contests the existence or validity of the alleged arbitration agreements, or (2) after the court allows discovery on the alleged agreements' existence and validity, the [employer] establishes by a preponderance of the evidence the existence of a valid

14

arbitration agreement for each employee it seeks to exclude from receiving notice.").  At oral argument, Defendants' counsel could not definitively state that the individuals in question would be precluded from joining the collective.

The weight of jurisprudence within the Second Circuit, however, and more particularly in this district, favors erring on the side of being overinclusive when sending notice to potential plaintiffs.   *See Zambrano v. Strategic Delivery Sols., LLC*, No. 15 CIV. 8410 (ER), 2021 WL 4460632, at *10 (S.D.N.Y. Sept. 28, 2021) (providing an overview of cases in which courts have deemed it appropriate to send notice to potential collective members who have signed an arbitration agreement); *see also Barone v. LAZ Parking Ltd., LLC*, No. 3:17-CV-01545 (VLB), 2019 WL 5328832, at *3 (D. Conn. Oct. 20, 2019) (declining to follow the Fifth Circuit's approach).[13]  The court notes, too, that it is in the interest of judicial economy to consolidate actions where appropriate; it would be counterproductive for courts to see piecemeal litigation occurring but to ignore that fact when determining whether collective certification is appropriate.  It is significant,

---

[13] District court jurisprudence from around the country also favors allowing apparently-ineligible individuals to receive notice early in a collective action.  *See, e.g.*, *Lancaster v. FQSR*, No. CV TDC-19-2632, 2020 WL 5500227, at *7 (D. Md. Sept. 11, 2020) (finding that "efficiency disfavors delaying certification and notice until after the resolution of whether there are binding arbitration agreements . . . ."), *Arellano Galvan v. San Jose Mexican Rest. of NC, Inc.*, No. 7:16-CV-39-FL, 2016 WL 6205783, at *2 (E.D.N.C. Oct. 24, 2016) (finding that there was insufficient information in the record at step one to exclude individuals who had waived all claims against defendants, and concluding that it would be appropriate to weed out ineligible individuals at step two of certification), *Mowdy v. Beneto Bulk Transp.*, No. C 06-05682 MHP, 2008 WL 901546, at *6 (N.D. Cal. Mar. 31, 2008) (reserving its determination of whether valid arbitration agreements exist until after notice has been sent), *Fitzpatrick v. Cuyahoga Cty.*, No. 1:17 CV 1235, 2017 WL 5178266, at *3 (N.D. Ohio Nov. 8, 2017) (finding that whether certain opt-in plaintiffs are ineligible to participate in the collective action is a substantive determination that need not be made at the conditional certification stage), *Pontius v. Delta Fin. Corp.*, No. CIV.A. 04-1737, 2005 WL 6103189, at *4 (W.D. Pa. July 22, 2005) (finding that "notice and an opt-in opportunity should be broadly given, even though the [c]ourt may subsequently conclude, following discovery and additional legal analysis, that such individuals are ineligible for class participation."), *Williams v. Omainsky*, No. 15-0123-WS-N, 2016 WL 297718, at *8 (S.D. Ala. Jan. 21, 2016) (finding that "the existence of [arbitration] [a]greements neither negates the propriety of conditional certification nor renders these putative opt-in plaintiffs ineligible to receive notice or file consents to join, subject to defendants' right (if they so choose) to move to enforce the mediation/arbitration provisions.").

too, that the previous litigation is extremely probative of the question under discussion. The fact that other individuals already have brought similar claims shows that there are, in fact, others who have asserted having had experiences like Plaintiff's.

Even without considering these previous litigants, however, the court finds that Plaintiff has shown, based only on her own testimony, on PCA Masoloko's affidavit, and on Liberty's employment records, that there are other similarly-situated individuals such that issuing notice is warranted.  Relevant case law is clear that the threshold for conditional certification is low, and the court affords particular acknowledgement to the fact that in the case at bar, an employee in Plaintiff's position[14] has limited opportunity to discover similarly-situated individuals.  Unlike many employees in typical work environments, Plaintiff has no shared office space within which to meet (much less to interact with) her colleagues.  There is no shared water cooler around which employees might gather to discuss matters such as their work conditions.  There is no time clock or employee breakroom where employees such as the plaintiff might post a notice to determine whether there are other colleagues who assert similar grievances.  Plaintiff's unique workplace isolation might well warrant an even more relaxed requirement for conditional certification than this court here applies; nevertheless, the applicable legal standard (and the interest of justice) does not permit employers (intentionally or not) to sufficiently isolate their employees so as to prevent their realization of legally-provided protections or to render impossible their ability to satisfy even this low legal burden. Here, the plaintiff only in exceedingly rare occasions encountered other employees in the normal course of her work.  Indeed, the few PCAs with whom she interacted (when

---

[14] Plaintiff worked alone in a residential (live-in) setting, providing non-medical care to a client.

they were relieving her during her rare times away from clients) are among those colleagues who already have litigated their cases.  It would be contrary to the broad remedial goals of the FLSA to find that there is a category of employees which, through their dutiful work, functionally is excluded from the benefits of the FLSA to which the employees explicitly are entitled.

Moreover, for several of Plaintiff's claims, she need point to nothing beyond Liberty's own employment agreements and handbooks to show that the other PCAs are similarly situated.  It is clear from the record that all PCAs operated under the same policies of employment, and Liberty does not dispute either that it did not prescribe any fixed hours for its PCAs' sleeping periods or that it required its PCAs to make up lost sleeping time and breaktime.  Plaintiff contends that these policies violate the law, and that she and all other live-in PCAs are victims of a literal common policy.

Therefore, the court concludes, at this stage, that Plaintiff has made the requisite modest factual showing that there are others who are similarly situated.  Accordingly, conditional certification is granted.

### iii.  *Tolling*

There is a related question of the appropriate statute of limitations for the purpose of issuing notice to potential collective members.  While the FLSA typically carries a two-year statute of limitations, the statute provides for a longer, three-year statute of limitations for "willful" violations.  Plaintiff did allege a willful violation in Count One.  And, while the court notes that Count Three does not use the word "willful," it alleges the same violations as Count One, simply against a different defendant, and so

for purposes of this discussion the court will include Count Three in its assessment of whether Plaintiff sufficiently has alleged a willful violation.

A violation is willful for purposes of the FLSA where an employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by" the FLSA.  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir.2009)).  When certifying an FLSA collective, courts in this district generally wait to definitively rule on a collective's temporal restrictions until after notice has been given, requiring only that a plaintiff make sufficient allegations to implicate the longer, three-year statute of limitations.  *See, e.g., Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F. Supp. 2d 606, 623 (D. Conn. 2007) ("Plaintiff's allegations of willful violation are sufficient, at this preliminary notice stage where merits are not considered, to support defining the class on the basis of the three-year statute of limitations.") (internal citation omitted); *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 73–74 (E.D.N.Y. 2016) ("At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class.") (quoting *Jie Zhang v. Wen Mei, Inc.*, No. 14–CV–1647, 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015)).

Plaintiff has asserted facts sufficient to satisfy this standard at this point of litigation.  Plaintiff asserts that she informed Defendants that she was working through her breaks but that she was told that it did not matter and that she would not receive additional compensation for such time worked.  If a jury found her testimony on that point credible, it could find that Defendants willfully violated the FLSA.  Although Defendants assert that they conferred with an attorney in good faith when setting the

18

relevant policies, this is an argument to bring at a later point, when the court is assessing the merits of the collective claims.  At this conditional certification stage, Plaintiff has pled sufficient facts to trigger application of the longer statute of limitations.

Plaintiff also argues, however, that the collective's claims started accruing even longer than three years ago.  Throughout the Renewed Collective Motion and in both her pleadings, Plaintiff defines her proposed collective as those PCAs who worked at least one 24-hour shift between January 15, 2017, and the present.  Generally, the statute of limitations is calculated for each opt-in plaintiff individually based on the date they opt in.  *Curry v. P&G Auditors & Consultants, LLC*, No. 20CIV6985LTSSLC, 2021 WL 2414968, at *14 (S.D.N.Y. June 14, 2021) ("The 'statute of limitations for opt-in plaintiffs' FLSA claims runs until they actually join the lawsuit; it does not relate back to the filing of the named plaintiff's complaint.'") (quoting *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014)).  So even under the longer statute of limitations, a collective's claims usually cannot have begun accruing over five years before the collective is certified.

Plaintiff asserts that she is entitled to enforce a tolling agreement into which she entered with Defendants[15] before initiating this action.  Per that agreement, the parties agreed to toll the statute of limitations between January 15, 2020, and February 15, 2020, to allow the parties time to review the claims and to assess whether mediation was possible.  The advent of the COVID-19 pandemic, though, stalled efforts to schedule mediation, and Plaintiff filed this suit when she felt she no longer could wait out the indefinite delays from a not-yet-understood pandemic to assert her claims.

---

[15] Defendants were represented by different counsel at that time.

19

While the parties noted that they probably should update the tolling agreement to reflect the progress of their negotiations, they never did so amend the agreement. Therefore, there is no pending, enforceable contract under which Plaintiff is entitled to tolling for any period of time. Her claims and those of the collective must have accrued within the usual FLSA statute of limitations.

Accordingly, the collective will include those PCAs who have worked at least one 24-hour shift for Liberty within the past three years.

**iv. *Notice***

Plaintiff asks the court to order that her proposed notice be issued to potential opt-in plaintiffs. Defendants object to Plaintiff's proposed notice, though, asserting that it is duplicative and harassing because (1) she asks the court to order Defendants to provide information beyond just the names of people who qualify for the collective, such as their contact information and employee ID numbers, which include the last four digits of the PCAs' social security numbers, (2) she asks the court to order the notice be sent by mail, email, and text message, and (3) she asks that the notice be posted where the PCAs are employed, which presumably means in the homes of Defendants' clients.[16]

The first concern easily is addressed: the court orders that Defendants are required to disclose qualifying employees' mailing addresses, phone numbers, and email addresses, without the employee ID numbers or social security numbers, since Plaintiff has shown no need for that information at this time. And while it might be duplicative to send the notice via several methods, the court finds duplication necessary to ensure that the notice actually reaches qualifying employees via current and valid

---

[16] These objections were made in Defendants' opposition to the First Collective Motion and were incorporated by reference into their opposition to the Renewed Collective Motion.

contact information, particularly considering that the employees in question are not likely to own permanent homes and may no longer work for Liberty.  It appears from Plaintiff's deposition testimony that Liberty often communicated with its PCAs via text and email, so these would be familiar media for the PCAs.  ECF No. 61-7 at 99-100.  To minimize any potential confusion that might arise from receipt of the same notice several times, the court instructs Plaintiff to specifically note within the notice all the means by which the recipients can expect to receive the notice.

Regarding the third objection, the court agrees that posting the notice in each client's home would be unnecessarily duplicative, and potentially unreasonable as to Liberty's clients.  Unlike postings in a breakroom or on a message board at a Liberty facility, it would be more invasive to allow postings at the residence of a Liberty client. Additionally, this practice is unjustified in light of the court's rulings to allow PCA notice via email, mail, and text, through the sufficient contact information for the opt-in plaintiffs as will be provided by the defendants.

As to Defendants' request that Plaintiff's counsel be precluded from unsolicited communication with potential opt-in plaintiffs until the expiration of the opt-in period (a request to which Plaintiff takes no apparent position), the court finds such request to be reasonable.  Plaintiff's counsel may send the finalized notice via the methods previously stated, but otherwise shall not solicit the potential opt-in plaintiffs unless and until they have responded to such notice.

With respect to the content of Plaintiff's proposed notice, Defendants argue that (1) the court's impartiality should be more prominently and plainly stated, and (2) the notice fails to give adequate information relating to the obligations of potential opt-in

plaintiffs, including any potential costs.  Plaintiff replies simply that her proposed notice should be approved because it is not overbroad and because it does not impose undue burdens on Defendants.  While the proposed notice does specify that the court takes no position as to the merits of the case, it is reasonable for Defendants to seek more prominent amplification of such language.  As such, the court instructs Plaintiff to make these statements more prominent within the notice.  Specifically, the court adopts Defendants' request at pages 22–23 of their memorandum in opposition to Plaintiff's initial motion for conditional certification, *see* ECF No. 30, and orders Plaintiff's notice to state at the outset: "The United States District Court for the District of Connecticut has authorized this Notice pursuant to Fed. R. Civ. P. 23(c)(2)(B), but it does not endorse any parties or claims in this suit.  Rather, the purpose of this notice is to timely inform you of the existence of a collective action lawsuit (raising claims of unpaid wages, including unpaid overtime wages) and of your right to join the lawsuit, if you so choose, so that the case may proceed in an orderly and in an efficient manner."  This language is derived from *Allard v. Round Robin Operations, LLC,* No. 3:19-CV-01541 (JAM), 2020 WL 5200999, *4 (D. Conn. Aug. 31, 2020), and *McArthur v. Edge Fitness, LLC,* No. 3:17-CV-01554 (JAM), 2018 WL 3302591, *5 (D. Conn. July 5, 2018), cases cited by Defendants.

As for the request that Plaintiff list the obligations of opt-in plaintiffs, the court finds that the proposed notice already contains language sufficiently similar to that in *McArthur* to satisfy Defendants' concern.  Further, the court notes that the related consent form has been updated to refer to Liberty (and to no other unrelated entity). Finally, with respect to Defendants' argument that the fee arrangement must be clearly

disclosed in the notice, the court notes that Plaintiff's proposed noticed does describe the fee arrangement, *see* ECF No. 61-11 at 4, but instructs Plaintiff to ensure the accuracy of that description, particularly with respect to whether opt-in plaintiffs may be responsible for costs in the event that they are awarded damages.  Finally, given the court's determination regarding the tolling agreement, the notice also must be updated to reflect the relevant time period for the accrual of claims.

## IV.   RENEWED CLASS MOTION

### a.  Legal standard

Under Rule 23 of the Federal Rules of Civil Procedure, a plaintiff may be permitted to bring a claim on behalf of a class of persons where the four requirements of Rule 23(a) and one of the three requirements of Rule 23(b) are satisfied.  The subsection (a) requirements are numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a).  And Plaintiff purports to proceed under subparagraph (b)(3) of the Rule, which is used for those cases where class-action treatment may not be clearly necessary, but where nevertheless it is more convenient and efficient to adjudicate many very similar claims at once.  Fed. R. Civ. P. 23(b)(3). Its requirements are twofold: Plaintiff must show predominance and superiority.  *Id.*  In addition, she also must satisfy the implied requirement of ascertainability, which requires Plaintiff to show that the class is sufficiently well defined.  *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017).  Each of these requirements must be shown by a preponderance of the evidence.  *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). "The district court must determine through 'rigorous analysis' that all Rule 23

requirements are met to certify the class." *Mahon v. Chicago Title Ins. Co.*, 296 F.R.D. 63, 71 (D. Conn. 2013) (citing *In re Initial Public Offerings Sec.*, 471 F.3d 24, 40 (2d Cir.2006)).

### b. Discussion

Counts Two and Four of the FAC allege violations of the CMWA. Although the CMWA generally is an analog of the FLSA, the analysis in the previous section does not necessarily mean that Rule 23 certification of the state law claims also is appropriate. The Second Circuit clearly has stated that "the requirements for certifying a class under Rule 23 are unrelated to and more stringent than the requirements for 'similarly situated' employees to proceed in a collective action under [the FLSA]." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020), cert. dismissed, 142 S. Ct. 639 (2021). Thus, the court conducts a separate analysis as to the Renewed Class Motion.

In Counts Two and Four, Plaintiff asserts that Defendants failed to pay her and the putative class of PCAs for all hours they worked because (1) Defendants did not provide a fixed sleeping schedule, (2) Defendants failed to pay the PCAs for all the times that they worked through breaks, and (3) Defendants improperly deducted the additional 45-minute break from PCAs' compensable time.[17] [18]

Defendants again object that these are new arguments. The court already has partly addressed this objection in relation to the Renewed Collective Motion, but will note here that paragraph 60 of the FAC states that the question of whether Defendants

---

[17] Plaintiff at times also appears to revive the claim she had made in her First Collective Motion that Defendants' timekeeping practices were deficient, but Judge Meyer already has ruled that there is nothing wrong with the timekeeping system, and Plaintiff has not alleged new facts sufficient to cure the deficiencies he pointed out, so this discussion will not revisit that theory of recovery.

[18] Plaintiff also asserts that the employment agreement Plaintiff signed permitting the deduction of the additional 45-minute break is unenforceable, but it is not clear what purpose this argument serves in the context of a motion for class certification, and so the court will not discuss it here.

improperly were deducting an additional 45-minute unpaid break is a common question

of fact for purposes of a class action, so, like Plaintiff's other theories of recovery, this

argument also is presented sufficiently in the FAC.

The court turns now to the substantive requirements of Rule 23.

### 1. Numerosity

Numerosity requires a showing that the number of potential plaintiffs is so large

that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). It should be

noted that impracticable does not mean impossible; Rule 23(a)(1) requires "only that the

difficulty or inconvenience of joining all members of the class make use of the class

action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-*

*Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007). A plaintiff need not

allege a precise number of plaintiffs in order to show numerosity. *Robidoux v. Celani*,

987 F.2d 931, 935 (2d Cir. 1993). The Second Circuit has noted, though, that

numerosity is presumed with a proposed class of only 40 members. *Consol. Rail Corp.*

*v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing 1 *Newberg On Class*

*Actions 2d*, (1985 Ed.) § 3.05). There are considerations other than simple numbers,

too, which relate to the numerosity requirement, such as judicial economy, geographic

distribution of class members, the financial resources of class members, the ability of

claimants to litigate their claims through individual suits, and requests for prospective

injunctive relief which would involve future class members. *Robidoux*, 987 F.2d at 936.

This element presents the court with the threshold issue of when the alleged

class claims began to accrue. Plaintiff purports to bring Counts Two and Four on behalf

of all PCAs who worked at least one 24-hour shift for Defendants since January 15,

2018.  However, the CMWA has a two-year statute of limitations, Conn. Gen. Stat. Ann. § 52-596, and, as discussed above, there is no enforceable agreement which would entitle Plaintiff to toll any additional amount of time.  Therefore, because statutes of limitations are tolled in class actions until classification is determined, *see Plumbers' & Pipefitters' Loc. No. 562 Supplemental Plan & Tr. v. J.P. Morgan Acceptance Corp.* I, No. 08 CV 1713 ERK WDW, 2011 WL 6182090, at *2 (E.D.N.Y. Dec. 13, 2011) (citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552–53, (1974)), *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 54 (S.D.N.Y. 1987) ("When an action is instituted on behalf of all members of a proposed class, and the court determines that the suit may be maintained as a class action, the statute of limitations is tolled as to the class when the suit is started."), Plaintiff could only represent PCAs who have worked at least one 24-hour shift since April 28, 2018, at the earliest.

        Earlier in discovery, Defendants disclosed to Plaintiff that they employed about 65 individuals who worked at least one live-in shift between January 2017 and December 2019, but that time period is not quite correct.  Defendants have more recently disclosed to Plaintiff that they have employed 57 live-in caregivers since January 2018.  Again, this time period is not quite in line with the statute of limitations, but taking Defendants' two disclosures together, the court concludes that the number of PCAs working live-in shifts has remained generally consistent over recent years, and generally well in excess of the 40 members that is the presumptive threshold in this circuit.  Even excluding the handful of individuals who separately have litigated claims against Defendants, the remainder of live-in caregivers is sufficiently numerous.

26

Defendants argue that numerosity is not satisfied, however, because to date, only one additional plaintiff has opted-in to the action, and Plaintiff has not shown that there will be sufficient interest to reach the 40-individual threshold, regardless of the number of PCAs Liberty employs.  They also argue that the proposed number of live-in PCAs also includes some caregivers who only worked one live-in shift and would not be entitled to overtime.

In the first instance, it is not clear that Plaintiff has any obligation to indicate what the relative interest in a class action may be in order to certify a class under Rule 23. Defendants cite to no authority for this proposition.  Moreover, however, given the realities of the PCAs' working conditions, the fact that there are not more opt-in plaintiffs at this point in the action is not a reliable indicator of what interest there may be in class litigation.  *See Gortat v. Capala Bros., Inc., et al*, No. 07CV3629ILGSMG, 2009 WL 3347091, at *4 (E.D.N.Y. Oct. 16, 2009), report and recommendation adopted, No. 07-CV-3629 (ILG), 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010), aff'd, 568 F. App'x 78 (2d Cir. 2014) (finding that certain affidavits "are not a reliable indicator of a lack of interest in joining the class.").  It is unclear how many putative class members know about this action, or what they know, particularly as Plaintiff no longer works at Liberty.  This argument therefore is unconvincing.

Defendants' second argument is similarly unpersuasive.  If Plaintiff prevails on her arguments, then all live-in PCAs may be entitled to payment for the hours Liberty excluded, either at overtime or regular rate.  It is of no moment that Counts Two and Four only appear to deal with overtime payments, because the FAC clearly also asks for "[s]uch other relief as in law or equity may pertain."  ECF No. 59 at 20.  Payment at

27

regular rate for all hours the PCAs worked up to forty per week certainly is other relief which may pertain to Plaintiff's claims.

The court also finds that several of the *Robidoux* factors, including the financial resources of the claimants and their ability to bring individual suits weigh in favor of finding joinder impracticable. The putative class members are not wealthy and the demands of their work are such that it is unlikely they would have the resources to initiate individual suits or to intervene in this suit. Furthermore, as has been previously discussed, the evidence of piecemeal litigation of similar claims over the past several years indicates that it is in the interest of judicial economy to proceed as a class. Therefore, the court finds that Plaintiff has shown, by a preponderance of the evidence, that the numerosity requirement is satisfied.

### 2. Commonality

Commonality requires a showing that "questions of law or fact are common to the class." Fed. R. Civ. P. 23(a)(2). This requirement will be satisfied if a question of law or fact is "capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, (2011)). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson*, 780 F.3d at 137 (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir.2014)).

Plaintiff asserts that the commonality requirement is satisfied because there are common questions of law and fact for all members of the putative class. These

questions include: (1) whether Defendants counted interruptions to the sleeping period as time worked, (2) whether Defendants counted all hours their PCAs worked, (3) whether Defendants kept true and accurate records of the hours the PCAs worked,[19] (4) whether the PCAs were provided a regularly scheduled sleeping period, and (5) whether the PCAs had an extra 45-minute break excluded from their compensable hours.  Plaintiff further asserts that these questions can be answered with a common body of evidence, that is, with Defendants' business records and testimony.

Defendants respond that Plaintiff's purported common questions actually would require highly individualized inquiry.  Furthermore, Defendants point out that Plaintiff has not shown that she has personal knowledge of other PCAs' compensation, and they argue that she has inappropriately relied upon documents related to individuals who cannot participate in the class action.[20]  At best, they argue, PCA Masoloko's declaration and Plaintiff's testimony show two discrete allegations of violations of wage law, not a class action lawsuit.  They also raise the same merits-based arguments that they made in relation to the Renewed Collective Motion: that Plaintiff was provided with a regularly-scheduled sleeping period, that her sleep was not interrupted by calls to duty, and that there is no legal authority that prohibits Defendants from excluding an additional 45-minute break within each 24-hour shift.

---

[19] The court notes that throughout the Motions and the FAC, Plaintiff alleges deficiencies in Defendants' record keeping practices, at times almost appearing to hold out those deficiencies as a separate theory of recovery.  While the FLSA and the CMWA do impose certain record-keeping requirements upon employers, there is no private right to action to enforce those provisions.  *See Fuk Lin Pau v. Jian Le Chen,* No. 3:14CV841(JBA), 2015 WL 6386508, at *6 (D. Conn. Oct. 21, 2015) ("[N]either federal nor state law provides a private right of action to plaintiffs to enforce the record-keeping and notice-posting requirements in a civil action.").  Therefore, the court construes these record-keeping allegations as supporting arguments, not as independent bases for recovery.

[20] Again, Defendants also assert that the use of these documents may be without the named plaintiffs' knowledge, and again, that is a separate issue which the other plaintiffs may take up with their attorney.

Defendants' argument regarding the individuals who already have litigated their claims goes more toward numerosity, which was discussed above, and need not be addressed again here.  Also, it is not clear to the court why Plaintiff should have to allege any personal knowledge of other PCAs' compensation, but in any event she clearly does know something of the other PCAs' compensation, since PCA Masoloko has alleged a similar experience to Plaintiff's while employed with Liberty, and it is undisputed that the PCAs were subject to the same practice of automatically excluding breaks from compensable time.  Therefore, that argument fails.  Further, when determining whether class certification is appropriate, it is only proper to reach merits issues if such determinations are necessary in assessing the Rule 23 factors, and so the court will only discuss Defendants' merits arguments insofar as they are implicated in the certification analysis.  *See Mahon*, 296 F.R.D. 63, 71 (D. Conn. 2013) (noting that a district court will address a merits issue where it overlaps with a Rule 23 requirement, but that "the court should not assess any aspects of the merits unrelated to a Rule 23 requirement.") (citing *Initial Public Offerings*, 471 F.3d at 40).

The court finds that while it need not resolve most of Defendants' merits-based arguments in order to complete its rigorous certification analysis, the very fact of the merits-based arguments supports a finding that commonality exists.  While Liberty asserts that its PCAs do receive a regularly-scheduled sleeping period, it also concedes that it does not prescribe a fixed period in which its PCAs are permitted to sleep.  It is this policy, however, that Plaintiff argues violates FLSA regulations.  Whether the policy is violative is a common question of law for all the live-in PCAs, each of whom was subject to this same policy.  Similarly, whether there is legal authority which permits

Liberty to automatically deduct an additional 45-minute break period in each 24-hour shift is another question of law common to all live-in PCAs who worked for Liberty when it instituted this new policy.  The court need not resolve these questions to determine whether commonality exists because these common questions themselves (by virtue of their own existence) show that commonality exists, regardless of how these questions ultimately are decided.  Defendants of course may renew these arguments in subsequent motions as appropriate.

Whether Plaintiff in fact did experience interruptions to her sleep is the sole issue of fact that may require resolution at this point in the Rule 23 analysis.  It is true that Plaintiff's timesheets for the relevant period do not reflect any interruptions to her sleeping period.  However, Plaintiff asserts that she tried early in her time with Liberty to inform them of interruptions to her sleep and was informed that it did not matter, that she would not be compensated for that time.  She also asserts that her attempts to complete her timesheet differently than was laid out in the sample she was provided led to delays in her paycheck.  *See* ECF No. 30-2 at 21, 24.  PCA Masoloko stated that she had a similar response from Liberty when she tried to report interruptions to her sleep.  Liberty also concedes that it has a policy of requiring its PCAs to make up lost sleeping time at any point they can through their shift, rather than paying them for the interruptions.  Liberty even points to where this policy is stated in the PCAs' handbook.  From this evidence, the court concludes, for the purposes of this Renewed Class Motion only, that Plaintiff did experience interruptions to her sleep, but ceased reporting them when her reports proved fruitless.  Moreover, the court finds that this fact presents yet another question common to the putative class.  Liberty admits that it had a policy of

31

requiring its PCAs to make up lost sleep, which policy Plaintiff asserts is not permissible under the CMWA.  Whether her argument has merit is yet another common question of law the answer to which will substantially resolve backpay claims for any live-in PCAs who followed Liberty's stated policy of making up lost personal time.

Given these clearly common questions of law, all of which are capable of classwide resolution, the court finds that Plaintiff has shown commonality.

### 3.  Typicality

Typicality requires a showing that the claims or defenses of the parties are typical of those of the class.  Fed. R. Civ. P. 23(a)(3).  This requirement will be satisfied if a plaintiff can show that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux*, 987 F.2d at 936).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux*, 987 F.2d at 936–37.

Plaintiff first appears to argue that typicality is satisfied because all the claims are proceeding under the same statute, which argument the court will dismiss summarily as it is entirely too broad a reading of the typicality requirement; that a class's claims arise from the same statute says nothing about the relevant legal arguments or the events which precipitated the claims.  Plaintiff next argues that typicality is satisfied because each potential plaintiff's claims arise from the same course of events and use the same legal arguments.  She further assumes that the commonality requirement has been

satisfied, and asserts that where one is satisfied, the other often is, too.  Defendants respond that Plaintiff has failed to show the typicality of the claims because the various PCAs' potential claims would not arise from the same course of events, but would rather arise from each individual PCA's experience.

As covered in the previous section of this discussion, there are several legal arguments common to all the PCAs' alleged entitlement to overtime.  And while Defendants wish to focus on the individualized inquiries which any overtime claim necessarily will entail, this is too narrow a focus.  The PCAs' entitlement to overtime arises as much from Liberty's own policies as from any individual's unique experience. Liberty instituted a policy of not setting a sleeping period between fixed hours, from which arose Plaintiff's allegations that she and all other live-in PCAs were not given a regularly-scheduled sleeping period.  If she proves meritorious on this claim, any need for further individualized inquiry likely would be obviated, but for those inquiries necessary to the calculation of damages, which inquiries likely only would require reference to Defendants' business records to resolve.  Similarly, Liberty unilaterally began to deduct an additional 45-minute break each 24-hour shift, which, if Plaintiff's argument on that point prevails, is the only event relevant to the PCAs' ability to recover for that time.  And finally, it is undisputed that Liberty instituted a policy of requiring PCAs to make up lost breaktime and sleeping time, which perhaps is the precipitating event for Plaintiff's final theory of recovery: that she and the class were not paid for interruptions to personal time.  The court therefore concludes that it is Liberty's actions, not the PCAs', which are the events that led to these claims, and that these actions

affected all live-in PCAs, whatever their individual experiences may have been.  The court therefore finds that the typicality element also is satisfied.

### 4.  Adequacy

Adequacy requires a showing that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To satisfy this requirement, a plaintiff must show that they have the same interests as the class and that they have suffered the same injury as the class.  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594-95 (1997).  In this way, Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Amchem*, 521 U.S. at 625).

There is no dispute about Plaintiff's ability to adequately represent the interests of the purported class, and the court can discern no conflict of interest or improper motivation from Plaintiff.  Furthermore, the court is satisfied that Plaintiff's attorney adequately will be able to perform the role of class counsel, particularly considering his familiarity with these specific defendants and his history of representing other plaintiffs with similar claims.  Therefore, this element also is satisfied.

### 5.  Predominance

To show predominance, a party must show that (1) resolution of any material legal or factual questions can be achieved through generalized proof, and (2) the issues common to the class are more substantial than the issues requiring individualized proof.  *Petrobras*, 862 F.3d at 270.  "Calculating damages will raise some questions of an individual nature, but this fact is insufficient to prevent class certification where

34

questions of liability are common to all members of the proposed class." *In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366, 385 (S.D.N.Y. 2010).

Plaintiff reiterates her arguments from the commonality and typicality discussions above with respect to predominance: that the common questions of fact or law predominate over the individualized questions such that each PCA's potential claim could be proved from the same generalized proof, and this body of generalized proof would be more substantial than any individualized proof which also may be required. Defendants, in turn, renew their arguments that Plaintiff cannot show that the common questions predominate over the individual ones because the court will need to conduct individualized inquiry with respect to each PCAs' claims.  In addition, they argue that their defenses with respect to Plaintiff's claims are unique.

As regards the latter argument, it is unclear how Defendants know their defenses with respect to Plaintiff's claims will be unique when at present there are no other claims for comparison but for those of Ms. Masoloko, particularly when Defendants' defenses against Ms. Masoloko's claims are similar to the defenses they propose in response to Plaintiff's claims.  And while it is true that to some extent the court will have to conduct some individualized inquiries with respect to each PCA in order to ascertain whether they experienced interruptions to their sleeping periods, most of that individualized inquiry will be relevant to damages, not the substantive issue of liability.  The predominant questions are questions of law common to all the claims, that is, whether Liberty's policies were lawful in failing to institute fixed sleeping hours, in requiring PCAs to make up personal time lost to interruptions (instead of paying for those interruptions), and in excluding an additional 45-minute break.  Moreover, these questions can be

answered from a common body of evidence, that is, both Plaintiff's and Defendants' undisputed testimony.  The court therefore finds that predominance is satisfied.

### 6.  Superiority

In determining whether the superiority requirement is satisfied, courts should look to the four factors laid out in Rule 23(b)(3): the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3); *see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) ("[W]hile these factors, structurally, apply to both predominance and superiority, they more clearly implicate the superiority inquiry.").  "[M]anageability 'is, by the far, the most critical concern in determining whether a class action is a superior means of adjudication.'"  *Sykes*, 780 F.3d at 82 (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4.72 (5th ed. West 2014)).

Plaintiff asserts that the superiority requirement is satisfied because a class action would be more economical in terms of temporal, financial, and human resources.  She also points out that several plaintiffs have already brought similar claims, indicating that there is already piecemeal litigation of these issues occurring, so judicial efficiency also weighs in favor of class litigation.  And she asserts that a class action would be beneficial to the class members themselves, who may be unable to devote the requisite resources to litigation.  Defendants do not respond to this argument.

The court finds that the subparagraph (b)(3) factors weigh in favor of finding superiority satisfied.  The court can discern no particular reason why the putative class members would have any individual interest which would not be adequately represented in this action such that it would be preferable for them to litigate individually.  In fact, given the apparent demographics of the putative class, with members whose hourly rate is not great and who spend much of their lives working, it would not be unreasonable to conclude that their interests are better served from a class action than from separate suits.  And while some other PCAs have brought individual claims before, there have been only a handful of separate actions, and such a small number does not seem indicative of widespread interest in bringing separate lawsuits.  Furthermore, there are no other similar lawsuits currently pending such that there is a danger of conflicting resolutions, and the court posits that a class action actually would prevent inconsistent resolutions of the class members' claims.  And given that all the relevant events took place in Connecticut, that the named parties reside in Connecticut, and that the class only covers those PCAs who provided services in Connecticut, it seems appropriate to concentrate the action in this forum.  Finally, the court sees no peculiarities of this suit that would render it obviously unmanageable as a class action.  The only difficulty that the court can foresee is in contacting the entire class, as some of the members may no longer work for Liberty, and they may not own permanent homes.  This difficulty can be managed, though, by using several means of communicating with the class members.  Therefore, the court finds that superiority is satisfied.

### 7. Ascertainability

Ascertainability asks whether a class is sufficiently well-defined such that one could know whether one belongs to that class.  In the Second Circuit, this requirement is satisfied if a class is "defined using objective criteria that establish a membership with definite boundaries."  *Petrobras*, 862 F.3d at 257.

Here, the court agrees with Plaintiff's uncontested argument that her proposed class is well-defined and that the criteria for membership are clear and unambiguous. Plaintiff therefore has satisfied the ascertainability requirement, and with it, all the requirements for class certification.

Plaintiff asks the court to order that notice be issued to the class forthwith. However, given the court's conclusion regarding the appropriate window of time for the accrual of claims, the court finds that Plaintiff must first revise the notice in accordance with this order before it can issue.  Although Defendants do not raise any objections to the proposed notice, the court instructs Plaintiff to incorporate into the class notice those revisions that were approved in relation to the collective notice.


## V.   CONCLUSION

In accordance with the preceding discussion, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Re-Filed Motion for Conditional Certification, ECF No. 61, is **GRANTED in part.**

    a. The court conditionally certifies a collective comprised of Personal Care Assistants who worked at least one live-in shift for Liberty Homecare Options, LLC, in Connecticut within the past three years.

    b. Defendants are instructed to produce to Plaintiff, on or before **June 24, 2022**, the names, mailing addresses, email addresses, phone numbers, and dates of employment for all qualifying PCAs in Microsoft Excel format.

    c. Plaintiff is instructed to refile a proposed notice, which reflects the relevant limitations period and incorporates the accepted objections as noted in this ruling, on or before **June 24, 2022**.

2. Plaintiff's Re-Filed Motion for Class Certification, ECF No. 62, is **GRANTED in part**.

    a. The court certifies a class comprised of Personal Care Assistants who worked at least one live-in shift for Liberty Homecare Options, LLC, in Connecticut since April 28, 2018.

    b. Defendants are instructed to produce to Plaintiff, on or before **June 24, 2022**, the names, mailing addresses, email addresses, phone numbers, and dates of employment for all qualifying PCAs.

    c. Plaintiff is instructed to refile a proposed notice reflecting the relevant time limitation on or before **June 24, 2022**.  Defendants may file objections to the notice of the class action on or before **July 1, 2022**.

**SO ORDERED** in Hartford, Connecticut, this 16th day of June, 2022.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE
