UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHYLLIS HEADLY,<br>*Plaintiff*,<br>v.<br><br>LIBERTY HOMECARE OPTIONS, LLC, and LUCIA DEVIVO CATALANO,<br>*Defendants*. | )<br>)<br>)<br>)  3:20-CV-579 (OAW)<br>)<br>)<br>)<br>)<br>) |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS ACTION** is before the court upon the parties' cross-motions for summary judgment. The court has reviewed Defendants' motion for summary judgment and memorandum in support thereof ("Defendants' MSJ"), ECF No. 95; Defendants' Statement of Material Facts, ECF No. 96; Plaintiff's[1] Motion for Partial Summary Judgment and memorandum in support thereof, ECF No. 97 ("Plaintiff's MSJ"); Plaintiff's Statement of Material Facts, ECF No. 98;[2] both opposition briefs, ECF Nos. 101–02; Defendants' reply in support of Defendants' MSJ, ECF No. 103; all relevant exhibits; and the record in this case. For the following reasons, Defendants' MSJ is **GRANTED in part** and is **DENIED in part;** and Plaintiff's MSJ is **GRANTED in part** and is **DENIED in part.**

---

[1] Both parties present argument as to the only individual who has opted in to the collective, but this individual has not formally been made a plaintiff in this action, and therefore any discussion as to whether she has similar claims to Plaintiff is premature. The court will address this individual's claims when determining whether the collective may proceed. *Hinterberger v. Cath. Health Sys.*, 299 F.R.D. 22, 54 (W.D.N.Y. 2014) (describing the two-step certification process for collectives). Thus, this ruling will not discuss that individual.

[2] Plaintiff's statement of material facts was docketed as a motion, but there is no request for relief therein, and so the motion shall be terminated.

1

I.      **BACKGROUND**[3]

Defendant Liberty Homecare Options, LLC ("Liberty"), is a private company that provides Personal Care Assistants ("PCAs") to consumers to help them with non-medical tasks of daily living, such as preparing and serving food, changing clothing, and maintaining personal hygiene.  Some PCAs live-in with their assigned consumers.  Defendant Lucia Devivo Catalano is the owner of Liberty, ECF No. 101-1 ¶ 2 and response thereto, and the president of the company.

Plaintiff worked at Liberty as a PCA from March 2016 until March 2019, living in with her assigned consumer and working 24-hour shifts.  When Plaintiff began her employment with Liberty, she signed a written agreement that allowed 11 hours in each 24-hour shift to be excluded from her hours worked (such that she would not be paid for those 11 hours), representing eight hours of sleeping time and three, one-hour meal breaks.  Published in Plaintiff's employment agreement and in her manual, and on the timesheets themselves, was Liberty's policy of requiring PCAs to take all eight hours of sleep in each 24-hour shift, 5 hours of which had to be uninterrupted.  If an emergency interrupted a PCA's sleeping period, they were to try to make up the lost time at another point in the shift.  Any such interruptions were to be noted on their timesheets and called into the office within 24 hours.

In April 2018, Liberty began requiring that its PCAs take an additional 45-minute personal break, a policy memorialized in a new written employment agreement, which Plaintiff signed.  Again, Plaintiff's timesheets and employment agreement instructed her

---

[3] Except where otherwise noted, these background facts are taken from Defendants' statement of facts and Plaintiff's responses thereto, ECF No. 102-1, since the most comprehensive chronology of the events leading to this action is found therein.  Where necessary to include all essential facts, the court has cited to other parts of the record.

that she (1) was expected to get eight hours of sleep in each 24-hour shift, at least five of which had to be uninterrupted, (2) should try to make up any lost breaktime at another point in her shift, and (3) should call the office and report any breaktime interruptions.

Plaintiff's timesheets reported no breaktime interruptions from April 2018 until she left the company in March 2019. In accordance with the employment agreement, 11.75 of her hours were deducted from each 24-hour shift until she left the company.

Plaintiff contends, though, that throughout her time at Liberty, she was often required to work during her sleeping periods to attend to her consumer, whose limitations were such that he required frequent assistance. She states she informed Liberty early in her time with them that she was working during her breaks and sleeping periods, but she was told that she would not be paid for the interruptions, and she was expected to make up the lost time elsewhere during her shift. She further asserts that she completed her timesheets as instructed and as was done in the sample provided to her. She states that straying from the exemplar led to delayed paychecks.

## II. LEGAL STANDARD

A motion for summary judgment will be granted where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). The movant bears the burden of demonstrating that there is no genuine issue of material fact. *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *McCarthy v. Am. Int'l Grp., Inc.*, 283 F.3d 121, 124 (2d

Cir. 2002) (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1535 (2d Cir.1997)). If "there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Id.*

To defeat a summary judgment motion, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Rather, the nonmoving party must point to "specific facts in dispute to show that there is a *genuine issue for trial*." *Matsushita,* 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). If the nonmoving party submits evidence that is "merely colorable," or that is not "significantly probative," then summary judgment still may be granted. *Horror Inc. v. Miller*, 15 F.4th 232, 240–41 (2d Cir. 2021).

When reviewing a summary judgment motion, the court construes the cited evidence in the light most favorable to the nonmoving party and "resolves all ambiguities and draws all reasonable inferences against the moving party." *Horror*, 15 F.4th at 240.

### III. <u>RELEVANT LAW</u>

Before discussing the claims and arguments presented in this case, the court finds it useful to describe the legal landscape to give context to the analysis that follows.

It is axiomatic that under the Fair Labor Standards Act ("FLSA"), employers are required to pay their employees for all hours worked, and time and a half for all hours over 40 that the employee works in a single week. The Department of Labor ("DOL") has promulgated regulations that direct employers how to implement these mandates in

4

various working arrangements.  Relevant here, where a non-exempt employee is required to live on the employer's premises and provide services for a 24-hour shift,[4] DOL regulations permit the employer and employee to agree, expressly or impliedly, to exclude from the employee's hours worked eight hours of a "bona fide regularly scheduled sleeping period" and "bona fide meal periods."  29 C.F.R. § 785.22(a).  Any interruptions to these rest periods must be compensated as hours worked.  And if the employee is unable to get five hours of uninterrupted sleep during the scheduled sleep period, the entire eight hours must be counted as time worked.  29 C.F.R. § 785.22(b).

The Connecticut Minimum Wage Act ("CMWA") has similar provisions.  Time allowed for an employee to eat meals is not considered time worked under the statute.  Conn. Gen. Stat. § 31-76b(2)(A).  And for live-in, non-exempt employees providing companionship services (as the PCAs indisputably are), the CMWA also permits a regularly-scheduled sleeping period of eight hours to be excluded from the employee's hours worked, provided such employee gets at least five hours of sleep during that period.  Conn. Gen. Stat. § 31-76b(2)(D).  Any interruptions must be compensated, and if the employee does not get five hours of sleep during that period, the entire eight hours must be considered hours worked.  *Id.*

Connecticut courts generally find the CMWA to be an analog of the FLSA, thus holdings as to the FLSA are persuasive as to the CMWA.  *See Lassen v. Hoyt Livery, Inc.*, 120 F. Supp. 3d 165, 171 (D. Conn. 2015) ("The Connecticut Supreme Court has indicated that, in interpreting the [Connecticut Minimum Wage Act], federal precedent interpreting analogous provisions of the FLSA can be used.") (citing *Roto–Rooter Servs.*

---

[4] There are certain other prerequisites laid out in the relevant authority that the parties do not dispute were satisfied.  Those other requirements therefore will not be discussed herein.

*Co. v. Dep't of Labor*, 219 Conn. 520, 528 n. 8, 593 A.2d 1386 (Conn.1991)).  Accordingly, this ruling will accept authority relevant to the FLSA as authority relevant to the CMWA as well, except where caselaw or the statutes themselves demand otherwise.

## IV.   DISCUSSION

Plaintiff lists six Counts in the operative complaint.  She originally asserted two claims for failure to publish certain posters at her assigned workplace, but she does not move for summary judgment on those Counts and she does not respond to Defendants' summary judgment arguments as to them.  Accordingly, the court considers the claims abandoned and grants Defendants summary judgment on Counts Five and Six, entirely.

Counts One through Four assert claims for unpaid overtime against Liberty and Defendant Catalano under both the FLSA (on behalf of a collective) and the CMWA (on behalf of a class).  These claims are predicated upon several different theories of recovery.  Defendants argue that Plaintiff's legal theories have evolved over the course of litigation to the point where some of them should be disregarded.  Specifically, they argue that the claimed failure to provide a regularly scheduled sleeping period was not properly pleaded and that a theory premised upon faulty timesheets has been abandoned because Plaintiff has not responded to arguments for summary judgment on that theory.

The court agrees in part.  Plaintiff clarifies that she no longer is pursuing any recovery based upon the timesheets; any reference thereto is intended to support other theories.  So, the court need not discuss arguments of that theory.  The court also finds that the operative complaint placed Defendants on notice as to the regularly scheduled sleeping period provision.  While it did not explicitly plead that the make-up policy violates

relevant authority, a pleading need not detail the specifics of a legal theory, and discovery and Plaintiff's motions to certify the class and collective, respectively, certainly clarified the specifics of this legal theory such that Defendants had adequate notice of it. *See Zuppe v. Elite Recovery Servs., Inc.*, No. 3:05CV857 (JBA), 2006 WL 47688, at *1 (D. Conn. Jan. 5, 2006) (noting that motions for a more definite statement generally are disfavored and that "[t]he preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings.") (quoting *In re: MTBE Prod. Liability Litig.,* 233 F.R.D. 133, 2005 WL 1123888 at *1 (S.D.N.Y. May 11, 2005)); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). It is enough that Plaintiff pled that she was not compensated for interruptions to her sleeping period. *See, e.g.,* ECF No. 59 ¶¶ 4—5, 35, 47, 49—50. Accordingly, the court will address the parties' arguments related thereto.

Further, the court finds that while Plaintiff earlier in litigation appeared to argue that Liberty's policy of requiring PCAs to try to make up any lost breaktime (meals included) ran afoul of the FLSA and the CMWA, and although Defendants present argument as to the meal and sleeping periods, Plaintiff only responds with respect to the sleeping period. Accordingly, the court concludes that Plaintiff has abandoned any claim premised upon lost or interrupted meal periods. Finally, Plaintiff adduces certain facts and exhibits that imply an argument as to whether the breaktimes are bona fide, that is to say, whether the breaktimes are for the PCAs to do as they choose, including to leave the consumer's home. But not only is the argument unclear in the briefs, it has not been made at any earlier point in litigation. To the extent Plaintiff attempts to assert such a claim, the court

finds it has not been pleaded properly and cannot be raised for the first time at summary judgment. The court will not address this argument, either.

The court now turns to the three theories that have not been abandoned: that Defendants failed to provide PCAs with a regularly-scheduled sleeping period; that although PCAs reported to Defendants that they were frequently interrupted during sleeping periods, Defendants did not pay them for those interruptions, instead telling PCAs to make up the sleep time later in their shift; and finally, that Defendants improperly imposed an additional unpaid 45-minute break upon the PCAs.

### A. Regularly Scheduled Sleeping Period

Plaintiff's first legal theory presents a question of regulatory construction, specifically, the correct interpretation of the phrase "bona fide regularly scheduled sleeping period." There is no dispute that a "sleeping period" denotes a span of time each day when an employee may satisfy this fundamental necessity of life. The parties disagree, though, as to what it means for a sleeping period to be "regularly scheduled." Plaintiff contends that in order to be "regularly scheduled," a sleeping period must be set *by Defendants* for the same hours in each 24-hour shift. Defendants argue that it would be absurd to require all of the PCAs to sleep during the same hours each shift, without any regard for the needs of the PCAs themselves or their consumers. They assert that the regulation is satisfied if each PCA sets their own sleeping schedule at a time mutually convenient to them and the consumers.

The court agrees with Defendants. Nothing in the relevant authority suggests that the sleeping period must be set by the employer. Further, another regulation, 29 C.F.R. § 785.23, specifically applies to live-in employees, and the court finds it instructive. It

8

gives live-in employees and their employers leeway to arrange a reasonable employment agreement that accurately reflects the practical realities of the hours an employee typically works. Relevant here, it clearly states that it is satisfied by "*any reasonable agreement.*" A 2016 field guide bulletin from the Wage and Hour Division of the DOL clarifies that "the reasonable agreement should reflect the realities of the particular [employment] situation . . . ."[5] Thus, the FLSA clearly has an eye to the practical realities of varied work arrangements supporting Defendants' interpretation of the regulation.

The court notes that the CMWA also has no explicit requirement that the regularly scheduled sleeping period must occur at a time prescribed by the employer. And given Connecticut courts' reliance upon FLSA authority in construing the CMWA, the court is convinced that neither the FLSA nor the CMWA imposes the requirement Plaintiff suggests. Thus, the court concludes that it does not violate either federal or state law for an employer to expect a caregiver, in communication with their consumer, to set the hours which will be their regularly scheduled sleeping period. *See Maphutha v. Diligent Enterprises, Inc.*, No. 19-CV-1411 (VLB), 2021 WL 3493646, at *7 (D. Conn. Aug. 9, 2021), reconsideration denied, No. 19-CV-1411 (VLB), 2021 WL 6881583 (D. Conn. Sept. 29, 2021) (finding acceptable an employment agreement that delegates the setting of a sleeping period to caregivers and their clients).

Accordingly, the court rejects Plaintiff's argument that because Defendants did not prescribe the time during which PCAs were to sleep, they did not provide a regularly

---

[5] *See* Field Assistance Bulletin No. 2016-1, U.S. Dept. of Labor Wage and Hour Division (April 25, 2016), available at https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/fab2016_1.pdf (last visited Mar. 29, 2025).

scheduled sleeping period. Defendants therefore are entitled to summary judgment on the FLSA and CMWA overtime claims insofar as they are predicated upon this argument.

### B. Make-up Policy

The court next turns to the permissibility of Defendants' policy requiring PCAs to make up lost sleeping time. The parties raise a question of law and a question of fact. The former requires the court to determine whether the policy of requiring employees to try to make up lost sleep is permissible. The latter requires the court to determine whether there is a genuine factual dispute as to whether Plaintiff ever experienced such interruptions for which she was not compensated because she was expected to make up the lost time. Because answering the latter could moot the former, the court turns to the factual question first.

Defendants argue that throughout her employment with Liberty, Plaintiff recorded sleeping the same hours in every 24-hour shift without interruption, despite knowing that company policy required her to document all interruptions and to call them in to the main office. They also note that Plaintiff contacted the office several times with questions about her paycheck and requests for time off, showing that she could have contacted the office. They point to Defendant Catalano's declaration for the proposition that Plaintiff never called to report sleep interruptions. Plaintiff denies this assertion without citing any evidence to the contrary. ECF No. 102-1 ¶ 37 and response.

Generally, denial of an asserted fact without supporting record evidence can be considered an admission, and the court notes, with some shock, that presumably by egregious oversight, *nowhere* in the summary judgment record does Plaintiff present *anything* to support one of the core allegations of her suit: that although she called

10

Defendants about interruptions to her sleeping period, she was told that she had to make up the time and would not be compensated for the interruptions.  However, a deposition that Defendants have produced[6] includes sufficient testimony to show a genuine dispute of fact on this point.  Plaintiff's deposition at times asserts she completed her timesheets to match the examples she was given because doing otherwise delayed her paycheck. ECF No. 61-7 at 68 ("Because many times I fill out something wrong and I end up didn't get paid for that week because they said there's error on my time sheet."). She further asserts that she initially attempted to report interruptions. *Id.* ("Yes, I did [call the office to report interruptions to meal and sleep breaks]. But I did not continue to fill it out any more because I was disappointed, so I just fill in the necessary so I can get paid."); *id.* at 69 ("I called many times, too.  I called many times.").  But she was told that she had to try to make up lost sleep without pay.  *Id.* at 67 ("I was trying to report [interruptions] before and I get fed up and I stop because they say it doesn't make a difference, I'm not going to get paid."); *id.* at 55—56 ("I tried to record [interruptions] but they always tell me it doesn't matter, I just have to take my break whenever the client is sleeping. So I just get frustrated and just fill out my time sheet and leave the extra, you know."). Thus, there is a genuine dispute of fact as to whether Plaintiff slept the reported hours or whether she attempted to report interruptions to Defendants and either was told to make up the time elsewhere in her shift or that her timesheets had errors that prevented timely payment of her wages. This testimony also presents a genuine dispute as to whether Defendants had actual or constructive knowledge Plaintiff was working more hours than for which she was paid.

---

[6] Defendants' exhibit is redacted such that only those pages relevant to *Defendants'* arguments were provided, but it is the same deposition that Plaintiff produced (again in redacted form) in support of her motion for class certification.  *See* ECF No. 61-7.  The court has used both parties' submissions to ensure its review of the relevant testimony is as comprehensive as possible.

Given this conclusion as to the factual issue, the court turns to the legal issue: whether Defendants' policy is permissible under state and federal law.

In answering this question, the court again begins with the plain language of the relevant authority. The DOL's regulation is clear regarding sleep interruptions: they "*must* be counted as hours worked." 29 C.F.R. § 785.22(b) (emphasis added). The CMWA uses very similar language, stating that an "interruption [to the sleeping period] *shall* be counted as hours worked." Conn. Gen. Stat. Ann. § 31-76b(b) (emphasis added). This specific, prescriptive language tends to proscribe Defendants' make-up policy. And while one might argue that counting interruptions as hours worked is not necessarily mutually exclusive with reducing hours worked elsewhere in the shift, the plain language of both the regulation and the statute would foreclose acceptance of that argument, too, since each begins with the premise that only mealtimes and the sleeping period may be excluded from hours worked. There is no similar allowance for make-up sleeping time.

Further, the regulation goes on to specify that if an employee is unable to get "a reasonable *night's* sleep" (which the DOL interprets to mean at least five hours' sleep "*during the scheduled period*") then the entire 8-hour sleeping period must be counted as time worked. 29 C.F.R. § 785.22(b) (emphasis added). The CMWA also explicitly provides that if an employee "does not receive at least five hours of sleep time *during the scheduled sleeping period*, the entire sleeping period shall be considered hours worked." Conn. Gen. Stat. Ann. § 31-76b(b) (emphasis added). Neither the regulation nor the statute contemplates that an employee's sleeping period may occur at any point in the 24-hour shift.

Moreover, the court is persuaded that Defendants' make-up policy cannot satisfy the regulation's requirement that a sleeping period be "bona fide." Though the regulation does not define the phrase "bona fide," it otherwise states that excluding an 8-hour sleeping period only is appropriate when an employee normally can get a full night's sleep. 29 C.F.R. § 785.22(a). The DOL clearly contemplates that sleep interruptions should be the exception, not the norm, and as to this requirement, the court construes the phrase "bona fide" to mean that the sleeping period must be that period of time during which the employee normally can sleep. Defendants' make-up policy effectively renders the entire 24-hour shift the sleeping period, such that a PCA might get *no sleep* on a particular night and *still* not be compensated so long as they can sleep eight hours the *following* day. However, this is inconsistent with the plain language of the regulation.

This interpretation of the phrase "bona fide" also is consistent with what little jurisprudence exists construing the regulation. In *Trocheck v. Pellin Emergency Med. Serv., Inc.*, 61 F. Supp. 2d 685, 697 (N.D. Ohio 1999), a district court rejected an argument that an entire 24-hour shift might be designated a "sleeping period" because such a sleeping period would not be "bona fide." Another district court endorsed this principle in *Salazar v. Life Ambulance Serv., Inc.*, No. CIV.A.EP-99-CA-361EP, 2001 WL 685755, at *2 (W.D. Tex. Feb. 23, 2001), when it used Black's Legal Dictionary and the DOL's definition of a "bona fide meal period," 29 C.F.R. § 785.19, to conclude that for a sleeping period to be "bona fide," the employee must be completely relieved of their duties to sleep, and it must be that the employer and employee agree in good faith to the exclusion of such time. Notably, the *Salazar* court found that rather than adhering to the regulation, it appeared that the employer in that case "was merely combing employee

13

time records in order to find a period of time that would permit it to deduct hours." 2001 WL 685755 at *3. The court notes that Defendants' make-up policy effectively does the same thing the *Salazar* court found to be inconsistent with the regulation, though the responsibility is placed upon the PCAs to find the deductible hours.

Although the CMWA does not use the phrase "bona fide," it otherwise tracks the DOL's language closely, even specifically referring to it to incorporate a definition and an effective date. Conn. Gen. Stat. Ann. § 31-76b. And federal courts tend to construe the statute's protections to be coterminous with those of the regulation, except that the CMWA requires an agreement to exclude hours to be in writing. *Aboah v. Fairfield HealthCare Servs., Inc.*, No. 3:20-CV-00763 (SVN), 2024 WL 3552413, at *15 (D. Conn. July 26, 2024), motion to certify appeal denied, No. 3:20-CV-00763 (SVN), 2024 WL 5159161 (D. Conn. Dec. 18, 2024) ("The CMWA sleep time provision is similar in material respects [to the sleep time provision in the federal regulation] . . . ."). Connecticut caselaw indicates the same. *Belgada v. Hy's Livery Serv., Inc.*, 220 Conn. App. 102, 120 (2023) ("The legislative history does make clear, however, that the purpose of the [CMWA] was to make Connecticut law coextensive with federal overtime law."). The court therefore finds *Trocheck* and *Salazar* persuasive as to the CMWA as well as the FLSA.

The court acknowledges that neither *Trocheck* nor *Salazer* construes the regulation so strictly as to require the sleeping period to be a span of no more than eight recurring hours. Indeed, the regulation and the statutes themselves contemplate that an employee may have a sleeping period of longer than eight hours, though only eight hours are excludable. 29 C.F.R. § 785.22(a). Thus, the court might agree with Defendants that it does not violate the regulation to require a PCA to sleep in an extra 30 minutes if they

14

had a 30-minute interruption to their sleeping period the night before. *See* ECF No. 103 at 8 ("If a PCA's sleep was interrupted by half an hour, and she thus slept a half an hour later the following morning, it would not change the 'regularly scheduled' sleep period, as Liberty did not intend or anticipate that any such interruptions would occur on a regular basis."). But this argument is unsupported by Defendants' own cited evidence. Instead, it appears from Defendants' own proffered manuals[7] and employment agreements,[8] that PCAs were asked to make up lost sleeping time at any point in the 24-hour shift.[9] Thus, the court need not address the hypothetical situation Defendants posit.

Accordingly, the court finds that summary judgment must be granted to Plaintiff on the discrete issue of Defendants' make-up policy as applied to the sleeping period. But the factual question remains as to whether Plaintiff experienced sleep interruptions for which Defendants did not or would not compensate her.

### C. Additional 45-minute Breaktime

This is another claim that turns upon a question of law, though here only the CMWA requires scrutiny. Connecticut law specifically states that mealtimes and sleeping periods may be excluded from an employee's hours worked, but it does not so state as to other breaktimes. Conn. Gen. Stat. § 31-76b. Plaintiff asserts that Defendants therefore were not authorized to exclude the additional 45-minute breaks from the PCAs' hours worked.

---

[7] ECF No. 96-2 at ECF p. 19 ("Caregivers must have a minimum of 5 hours **uninterrupted** with a total of 8 hours or [sic] rest/sleep each 24hr period.") (emphases in original); *id.* at ECF pp. 19, 39 ("All breaks must be taken in full, and if there is an interruption during any break, the remaining rest time must be "made up" during a subsequent break or during "sleep" (rest) time.").
[8] ECF No. 96-2 at ECF p. 10 (noting that live-in PCAs must receive 8 hours of sleep, five hours of which must be uninterrupted, "within a 24 hour [sic] period"); *Id.* at ECF p. 55 ("If the Caregiver is interrupted at night by a Client's urgent request, they must document the length of the interruption on the timesheet each day it occurs and try to make up the sleep time interruption.").
[9] To the extent Defendants argue that this was not the policy, the court finds that there is at least a genuine dispute of fact as to the specifics of the make-up policy.

15

Plaintiff relies solely upon the overtime statute for this claim. She cites no other authority that supports her argument, though relevant jurisprudence is scant on this issue. But reading the overtime statute in its entirety leads the court to disagree with Plaintiff. First, nothing in the overtime statute says that mealtimes need to be one hour, and it is stated elsewhere in the General Statutes that, although employers are bound by law to provide mealtimes of "at least" 30 consecutive minutes, that provision "shall not prevent any employer and employee from entering into a written agreement providing for a different schedule of meal periods . . . ." Conn. Gen. Stat. Ann. § 31-51ii. Furthermore, were the court to agree with Plaintiffs, Defendants could cure the defect by simply calling the additional breaktime an additional mealtime, or by extending their three mealtimes to one hour and fifteen minutes. It is doubtful that the Connecticut legislature intended the CMWA to prescribe mere semantics.

Moreover, the CMWA defines the phrase "hours worked" to "include all time during which an employee is required by the employer to be on the employer's premises or to be on duty, or to be at the prescribed work place, and all time during which an employee is employed or permitted to work, whether or not required to *do so, provided time allowed for meals shall be excluded* unless the employee is required or permitted to work." Conn. Gen. Stat. Ann. § 31-76b(b) (emphasis added). Thus, the mealtime exclusion is not specifically and solely provided to caregivers working 24-hour shifts; it is provided to all hourly employees in Connecticut. To read the statute as Plaintiff does (only permitting mealtimes to be excluded from hours worked) would mean that no Connecticut employer could provide employees unpaid breaktimes. That reading completely ignores the first clause of the definition, which clearly states that any time an employee need not be at the

16

workplace nor on duty is not worktime.  Thus, the plain language of the statute shows that an employer may provide breaktimes to employees, but whether or not a breaktime must be paid depends on whether the employee is required to be on duty or at the workplace during that breaktime.

Whether this extra 45-minute break may be excluded from a PCA's hours worked, then, turns not on the formality of what the period is called, but on the functionality of how it is used.  As discussed supra, though, Plaintiff failed to plead that she lacked discretion over her breaktimes, and so any implied argument that this additional break constitutes "hours worked" within the meaning of the statute will not be reviewed here.

Accordingly, summary judgment hereby is granted to Defendants on this claim.

### D. Bad Faith

Finally, given the partial denial of Defendants' MSJ, the court must turn to two ancillary issues on which Plaintiff argues that she is entitled to summary judgment: whether Ms. Catalano is an "employer" subject to liability in this lawsuit; and whether there are facts alleged sufficient to support an inference that Defendants acted in bad faith such that they may be subject to additional damages.

Taking the latter question first, the only evidence Plaintiff provides in support of her contention that Defendants acted in bad faith is that they sought and received supplementary training and information about relevant law.  In other words, Plaintiff's evidence that they willfully flouted the law is their efforts to learn it.  The court understands Plaintiff's argument to be that having taken such efforts to become informed about employment laws, Defendants' failure to adhere strictly thereto only can be attributed to a deliberate decision not to follow those laws.  But the court concludes that while a jury

certainly could infer bad faith from such evidence, they also could infer the opposite. Accordingly, there is a genuine dispute of fact as to whether Defendants exhibited bad faith in requiring their PCAs to try to make up lost sleeping time. Consequently, summary judgment cannot be granted on this issue.

### E. Defendant Catalano as an "Employer"

Finally, the court discusses whether Defendant Catalano could be liable as an employer under the CMWA.[10] The CMWA defines the term "employer" broadly, encompassing "any owner or any person . . . acting directly as, or on behalf of, or in the interest of an employer in relation to employees . . . ." Conn. Gen. Stat. Ann. § 31-58. The Supreme Court of Connecticut has construed this definition to include "an individual who possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so." *Butler v. Hartford Tech. Inst., Inc.*, 243 Conn. 454, 462 (1997). The parties disagree whether Defendant Catalano fits this definition as a matter of law.

The court agrees with Plaintiff that Defendant Catalano is an "employer" within the meaning of the CMWA.

Although in her deposition testimony she attempted to obfuscate her responsibilities at Liberty, it is clear that Defendant Catalano set the policies that dictated the PCAs' hours of employment, gave ultimate approval for hiring and firing of employees, and determined PCA pay. For example, although Defendant Catalano stated that she did not directly hire the PCAs, instead delegating that to a subordinate, she conceded that she approved the hiring of additional staff at the subordinate's recommendation. ECF

---

[10] Plaintiff asserts FLSA claims against Defendant Catalano, too, but does not move for summary judgment with respect to her employment status under the FLSA.

18

No. 98-2 at 26—27. She also testified that PCA compensation was set by "mathematical equation," in that she was constrained by governmental forces in what she could pay them, which was done with the assistance of her bookkeeper. *Id.* at 27—28. Further, she testified that she "partially" set the fee structure for PCA compensation, which had to compete with market rates, rendering PCA compensation set by "the community." *Id.* at 33—34. She attempted to mitigate her role in setting the pay scale by stating that PCA pay had to account for the costs of doing business. *Id.* at 34. But of course, paying employees *is* a cost of doing business, and these deflections only prove Plaintiffs' point: the determination of pay rates always is dependent upon a number of factors, but ultimately it was Defendant Catalano who reviewed those factors, including market forces and fixed costs, and exercised her own discretion to determine what a fair, competitive, and feasible wage would be. It was she who determined how much company money would go to the PCAs and how much would be retained as profit. *Id.* at 32—33 (affirming that she determined how much Medicaid reimbursement would be paid to the PCA and how much would go toward profit). She ensured that subordinates followed proper procedure when terminating an employee (a procedure she designed). *Id.* at 51—52; 54. And it was she who was the ultimate authority in setting company policies. *Id.* at 30 ("I was the overseer; I was the one looking at the policies, the procedures, things like that."); *see also id.* at 63.

Thus, Defendant Catalano clearly is an "employer" as far as the CMWA is concerned, and summary judgment will enter for Plaintiff on this point.

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment, ECF No. 95, is **GRANTED in part**. Summary judgment is granted with respect to all claims except Plaintiff's FLSA and CMWA overtime claims, to the extent such claims are premised upon the requirement that PCAs make up lost sleeping time.

2. Plaintiff's Motion for Partial Summary Judgment, ECF No. 97, is **GRANTED in part.** The court hereby finds that Defendant Catalano is an employer within the meaning of the CMWA as a matter of law.

3. This action hereby is referred to a United States Magistrate Judge for purposes of a settlement conference. The Clerk of Court is asked to please assign a Magistrate Judge for this purpose.

**IT IS SO ORDERED** in Hartford, Connecticut, this 29th day of March, 2025.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE